## William Gilbert v. Delos Showerman and others.

*Injunction: Steam flouring-mill, properly conducted, in business locality, not enjoined for annoyance to family residing over adjoining store.* An injunction will not be granted, at the instance of an adjoining proprietor occupying the upper stories of his four-story store building as a residence, to restrain the carrying on, in a proper manner, of a steam flouring-mill, carefully constructed to avoid annoyance or injury to others, in one of a block of stores, in a city, in a locality not unsuitable for that purpose, and where all the buildings have been primarily constructed and mainly occupied for business purposes, notwithstanding the use of such building for that purpose causes annoyance to complainant and his family, and renders the occupation of his building, as a residence, less desirable than it otherwise would be.

GILBERT v. SHOWERMAN.

The complainant, having taken up his residence in a portion of the city mainly appropriated to business purposes, cannot complain of the establishment of any new business near him, provided such new business is not in itself objectionable as compared with those already established, and is carried on in a proper manner.

*Heard July 12. Decided October 4.*

Appeal in Chancery from Wayne Circuit.

This suit was brought by William Gilbert against Delos Showerman, Henry E. Champion and William R. Newkirk.

The facts are fully stated in the opinion.

*Ward & Palmer*, for complainant.

*C. J. Reilly* and *Moore & Griffin*, for defendants.

COOLEY, J.

This is a bill to enjoin a private nuisance.

The complainant is owner of a city lot in the city of Detroit, covered by a four-story brick building, fronting on the south side of Jefferson avenue and extending to Woodbridge street. The lower story of the building he has been accustomed to rent as a store or warehouse, while the upper stories are occupied by him, with his family, as a dwelling-house, and the roof as a convenient place for drying clothes. His ownership has continued for twenty years or more. Adjoining his building, on the east, is another four-story brick building, and he avers that the defendants, being in possession thereof, have set up therein a steam engine and boiler, and put in other machinery and fixtures, and fitted the same up as a steam flouring-mill, and are running, and threaten to continue to run, the said mill with the power of said steam-engine and boiler, and to use the said building with the machinery therein as such mill. He further avers that the use of such building, as a mill, causes great injury, inconvenience and damage to complainant in the occupation

23 MICH.—57.

and use of his said building, and endangers the safety of the building itself; that the motion of the machinery, in running said mill, shakes complainant's building, weakening the walls thereof and permanently damaging the same, and creates a rumbling noise and a trembling motion, that causes the doors, windows, crockery and any other fixtures or articles that are loose in complainant's dwelling-house to rattle continuously; that the fires of said boiler and steam-engine generate large quantities of soot and cinders, which are thrown out therefrom on the roof of complainant's said dwelling-house, and that the steam is thrown out from said boiler and engine, through the exhaust pipes, and condenses and falls thereon, keeping the same, and the air above it, foul and damp, and that flour collects about said mill, from the use thereof, and turns musty and sour, and poisons the air in, and about, complainant's said building. By means whereof complainant alleges that his dwelling-house is rendered uncomfortable, unhealthy, noisy and unfit for occupation, and complainant is deprived of the use of the roof thereof for the ordinary purpose of drying clothes thereon, and is hindered and prevented from renting his store and deriving gain and profit therefrom. Wherefore he prays a perpetual injunction to restrain the defendants from using their said building for such steam flouring-mill, and from using or running said steam-engine, boiler and machinery therein.

The case was heard in the court below on pleadings and proofs, and although there is some conflict in the evidence, there does not appear to be any serious difficulty in arriving at a satisfactory conclusion regarding the leading facts. The buildings mentioned as occupied by the parties respectively, are situated upon one of the main business streets of the city of Detroit, in a long block of continuous buildings, which extend through to, and have a front

upon, another business street of less prominence.  All the buildings appear to have been constructed with a view primarily and mainly to occupation for business purposes, and the location not less than the nature of the buildings has caused them to be so. occupied.  The occupants are in the main merchants, but some manufactures are also carried on in the block, among which is the manufacture of tobacco, requiring heavy machinery moved by the power of steam. All the time a greater or less number of families have resided in the block, generally over stores and manufactories, but the tendency has been for families to give way to business, and at present but few remain; probably not more than would be found in almost any business block in a town of corresponding size.  The defendants began converting their building into a steam flouring-mill very early in 1870, and had the mill in operation about the first of July in that year.  The present bill was filed more than a year after the machinery was put in, and more than eight months after the mill was in operation; and it does not appear that while the improvement was going on, or afterwards, except by the commencement of suit, there was any remonstrance on the part of complainant.  There can be no question that the mill causes annoyance to complainant and his family, and renders the occupation of his building, as a residence, less desirable, but we are not satisfied by the evidence that there has been any want of due care, or any willful disregard of the rights of their neighbors, in the manner in which the defendants have carried on their business, and there is strong showing that the mill was carefully constructed with a view to · avoiding, so far as should be practicable, any annoyance or injury to others. We have no doubt the defendants put in their machinery in entire good faith, supposing they were legally and morally entitled to do so, and that it is not possible for them

entirely to avoid causing some annoyance and discomfort to complainant, unless they discontinue wholly the use of their machinery. Whether the value of complainant's premises for business purposes is reduced by the proximity of the mill is a question we need not consider, though some evidence has been produced on both sides of it. For some kinds of occupation his building would undoubtedly be less valuable.

This, we think, is a fair statement of the case; and the question which it presents is, whether the complainant, in consequence of the annoyance which the business of the defendants causes him, is entitled to have that business enjoined. It is not a question of mere damages, such as might arise in an action on the case, but it goes to the foundation of the right in defendants, under the circumstances, to make use of their premises in the manner they have decided to be for their interest; and if the conclusion shall be adverse to them, the loss in the breaking up of their business, and in the depreciation of machinery, which can only be made use of after removal to some new locality, must be very considerable. Nevertheless, if it is the legal right of complainant to have the annoyance to himself and his family enjoined, the unavoidable consequent loss to the defendants cannot preclude this remedy. The serious consequences to them can be reason only for more careful and patient consideration of the case before the legal principles govering it are applied to their detriment..

Generally speaking, it may be said that every man has a right to the exclusive and undisturbed enjoyment of his premises, and to the proper legal redress if this enjoyment shall be interrupted or diminished by the act of others. The redress, if the injury is slight or merely casual, or if it is in any degree involved in doubt, should be by action for the recovery of damages; but if permanent in its nature,

GILBERT *v.* SHOWERMAN.

so that by persistence in it the wrong-doer might, in time, acquire rights against the owner, it is admissible for the court of chancery to interfere by injunction, provided the injury is conceded or clearly established;—*Webb v. Portland Manuf. Co., 3 Sum., 189; Walker v. Shepardson, 2 Wis., 384;* though the power to do so should be cautiously and sparingly exercised.—*Attorney General v. Nichol, 16 Ves., 338; Rosser v. Randolph, 7 Port., 238.* An offensive trade or manufacture may call as legitimately for the interference of equity as any other nuisance, for, as is said by Sir William Blackstone, though these are lawful and necessary, yet they should be exercised in remote places.—*2 Bl. Com., 217; Catlin v. Valentine, 9 Paige, 575; Hackney v. State, 8 Ind., 494.* The right, nevertheless, to have such a business restrained is not absolute and unlimited, but is, and must be in the nature of things, subject to reasonable limitations which have regard to the rights of others not less than to the general public welfare. One man's comfort and enjoyment with reference to his ownership of a parcel of land cannot be considered by itself distinct from the desires and interests of his neighbors, as otherwise the wishes of one might control a whole community, and the person most ready to complain might regulate to suit himself, the business that should be carried on in his neighborhood. In a crowded city some annoyance to others is inseparable from almost any employment, and while the proximity of the stables of the dealers in horses, or of the shops of workers in iron or tin, seems an intolerable nuisance to one, another is annoyed and incommoded, though in less degree, by the bundles and boxes of the dealer in dry goods, and the noise and jar of the wagons which deliver and remove them. Indeed, every kind of business is generally regarded as undesirable in the parts of a city occupied most exclusively by dwellings, and the establishment of the most

cleanly and quiet warehouse might, in some neighborhoods, give serious offense and cause great annoyance to the inhabitants. This cannot be otherwise so long as the tastes, desires, judgments and interests of men differ as they do, and no rule of law can be just which, in endeavoring to protect the interests and subserve the wishes of a complaining party, fails to have equal regard to the interests and wishes of others. The true principle has been said by an eminent jurist to be one "growing out of the nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property is held subject to those general regulations which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient."—*Shaw, Ch. J. in Commonwealth v. Alger, 7 Cush., 84.*

The question, therefore, in the case at bar must be, whether there is any thing in the nature of the case which renders it unreasonable, in view of the relative rights, interests and wishes of both parties and the general welfare of the public, that defendants should continue upon their premises the business they are now engaged in, or whether, on the other hand, the resulting annoyance to the complainant must be regarded as one which is incident to the lawful enjoyment of property by another, and which, consequently, can form no basis for legal redress.

GILBERT v. SHOWERMAN.

And in considering this question, the fact is to be kept in view that the business of the defendants is one which is lawful in itself and necessary to the community, and which the public good requires shall be carried on by some persons in some locality.    The question is, whether it be proper and right that it be carried on in the particular locality where it is now established.    Even the most offensive trade, as we have seen, is allowed to be carried on in a *remote* place; and this means, not a place remote from all other occupations and trades, but remote from such other occupation or trade as would be specially injured or incommoded by its proximity; in other words, in a place, which, in view of its offensive nature, is a proper and suitable one for its establishment.    The most offensive trades are lawful, as well as the most wholesome and agreeable; and all that can be required of the men who shall engage in them is, that due regard shall be had to fitness of locality.    They shall not carry them on in a part of the town occupied mainly for dwellings, nor, on the other hand, shall the occupant of a dwelling in a part of the town already appropriated to such trades, have a right to enjoin another coming in because of its offensive nature.    Reason, and a just regard to the rights and interests of the public, require that in such case the enjoyments of pure air and agreeable surroundings for a home shall be sought in some other quarter; and a party cannot justly call upon the law to make that place suitable for his residence which was not so when he selected it.

In the case before us we find that the defendants are carrying on a business not calculated to be specially annoying, except to the occupants of dwellings.    They chose for its establishment a locality where all the buildings had been constructed for purposes other than for residence.    Families, to some extent, occupied these build-

ings, but their occupation was secondary to the main object of their construction, and we must suppose that it was generally for reasons which precluded the choice of a more desirable neighborhood.   The number of these families, moreover, was decreasing, and in view of the size of the block, was really insignificant at the time this machinery was put in.   Some kinds of business were then carried on in the block, which were likely to be equally offensive to adjoining proprietors with that of the defendants, and it is not shown that any complaint was made of them.   In view of these facts we think it is not shown that the defendants were bound to know they were invading the legal rights of other persons when they established their present business, nor can we say that the evidence satisfies us that they selected an unsuitable locality for the purpose.

We cannot shut our eyes to the obvious truth that if the running of this mill can be enjoined, almost any manufactory in any of our cities can be enjoined upon similar reasons.   Some resident must be incommoded or annoyed by almost any of them.   In the heaviest business quarters and among the most offensive trades of every city, will be found persons who, from motives of convenience, economy or necessity, have taken up there their abode; but in the administration of equitable police, the greater and more general interests must be regarded rather than the inferior and special.   The welfare of community cannot be otherwise subserved and its necessities provided for.   Minor inconveniences must be remedied by actions for the recovery of damages rather than by the severe process of injunction.

On the whole case we are of opinion that the complainant, having taken up his residence in a portion of the city mainly appropriated to business purposes, cannot complain of the establishment of any new business near him, provided such new business is not in itself objectionable as compared

with those already established, and is carried on in a proper manner. We do not find from the evidence that the business of defendants was thus objectionable, or that in the manner of conducting it there is special ground of complaint. . And the decree dismissing the bill must, therefore, be affirmed with costs. But the dismissal is to be without prejudice to any proceeding the complainant may be advised to take at law.

The other Justices concurred.