## DALLAS CONSOLIDATED ELECTRIC STREET RAILWAY COMPANY v. J. M. BROADHURST.

### Decided March 29, 1902.

**1.—Street Railway—Negligence—Presumption from Accident.**

Where plaintiff, while properly boarding an electric street car, was injured by a severe electric shock received through the hand holds of the car, the fact of such injury raised a presumption of negligence such as cast the burden of proof on the defendant company, since the car was under its management and the accident such as would not have occurred in the ordinary course of things if proper care had been used.

**2.—Same—Degree of Care.**

A charge that the defendant street railway company owed its passengers the duty of exercising "great care and caution" to keep the machinery and appliances of its cars in a reasonably safe condition and repair and in their operation, did not impose a higher degree of care than the law requires, and the court's omission to define such term or expression was not reversible error in the absence of request for a charge supplying the omission.

**3.—Same—Issue Not Raised by Evidence.**

A charge exempting the defendant company from liability for the injury if by the highest degree of care it could not have discovered the danger and prevented the same was properly refused where there was no evidence that the car and its appliances were in proper condition at the time of the injury, or that the car had been recently inspected and found in good repair, or that the danger from electricity could not have been discovered by the exercise of care.

**4.—Same—Evidence of Other Injury.**

Evidence that another person, on the same day and the day before plaintiff's injury, was shocked by the same car, was admissible to show that the car and its equipments were not in proper repair, and that defendant knew or ought to have known the fact by the use of proper diligence.

**5.—Trial—Remarks of Court.**

Defendant's counsel during the trial asked an adjournment of court until the following morning, stating that he had two more witnesses, and when through with them would offer no more testimony. When the two witnesses had testified the next morning and counsel called yet others, the court, reminding him of his statement on the preceding evening, said he did not think counsel was treating the court fairly, but ruled that the witnesses might be examined. Held, that such remark of the court was not prejudicial error.

Error from Dallas. Tried below before Hon. Richard Morgan.

*Wood & Hudson,* for plaintiff in error.

*Finley, Etheridge & Knight,* for defendant in error.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was instituted by J. M. Broadhurst in the District Court of Dallas County, Forty-fourth Judicial District of Texas, against the Dallas Consolidated Electric Street Railway Company, for damages claimed to have been sustained on account of personal injuries. Plaintiff alleges that on the 30th day of July, 1900, he attempted to board one of the defendant's street cars on Lamar street, near the point where the street railway crosses the Texas & Pacific Railway, with the intention of becoming a passenger

of the defendant company; that the car was standing still, and held in the attitude of invitation to passengers to board the same, at the time plaintiff attempted to board said car and become a passenger therein; that plaintiff placed his foot upon the step of the car and caught hold of the handbar, and that immediately upon the contact of his hand with such hold he received a severe, painful electric shock, and by means of the electric current his grasp became fixed and he could not release the same; that while in this attitude the motorman started the car and plaintiff was dragged some distance over the rough street, and finally his grasp upon the handhold gave way and he fell upon the street; that he was rendered unconscious thereby. That he was severely injured thereby and one of his hip joints was severely and permanently injured, rendering him lame; and received injuries in his spine and back; that his kidneys were seriously and permanently injured, and that he was caused great physical and mental pain and anguish by reason of the injuries so inflicted upon him; and further, that his sexual organs and powers were seriously injured and permanently impaired and to a great extent destroyed; that his nervous system was impaired and seriously disturbed, and such injuries were permanent in their nature, and that by reason of said injuries it has been necessary to employ a physician and buy medicine at an expense of the sum of $200; that his capacity to labor and perform work and make money was seriously and permanently impaired, and by reason of the loss of time from his work and labor, he has been damaged in the sum of $500.

Plaintiff further alleges that the said injuries so sustained were caused by the negligence of the defendant railway company, and charges that the electric appliances attached to and connected to the car of defendant railway company on which he attempted to take passage, were old, defective, out of repair, wrongly constructed, and unsafe for the operation of any street railway; that the tracks, cars and all the appliances in the operation of said street railway, at the point where the plaintiff attempted to board said car, were defective in construction, out of repair, and that the electrical currents designed to propel the cars were impaired and defectively applied; that the appliances for controlling the same were defective and out of repair, and that in all these respects the defendant railway company was guilty of negligence, and such negligence directly and proximately caused the injury to plaintiff hereinbefore set out.

That the defendant was further negligent in that the motorman started the car without warning, before plaintiff had succeeded in boarding the same, and that the motorman might have known, or by the exercise of reasonable care could have known, that plaintiff was attempting to board the car at the time he so started, and that plaintiff had received an electric shock which prevented him from either getting aboard or turning loose, and that said motorman started the car and operated the same while plaintiff was in such attitude, thus necessarily resulting in the injury and damage to plaintiff; that the act of the motorman in

starting the car and operating it under the circumstances as aforesaid was negligence and proximately caused the injury to plaintiff as above set forth. And on account of which said allegations plaintiff sues for the sum of $10,000.

The defendant answered by general demurrer and general denial, and further plead contributory negligence on the part of the plaintiff in attempting to board the car while the same was in motion, and at a time and place where, if not in motion, said car did not stop for the purpose of receiving passengers. Defendant also plead that the car was in good order, properly equipped with all the modern appliances to properly conduct an electric current. The cause was tried on May 11, 1901, and resulted in a verdict for the plaintiff for $5200, upon which judgment was duly entered. Upon its motion for a new trial being overruled, defendant excepted and has prosecuted a writ of error to this court.

The plaintiff in error contends, under its first, second, and third assignments of error, that the defendant company having used modern and approved appliances in running its electric cars, the mere fact that a passenger received an electric shock is not in itself sufficient to show negligence on the part of the company; and especially is this so where the handhold of the car is charged with electricity and such fact was unknown to the defendant company, and could not be known by any amount of diligence. It is shown by the evidence that on the 30th day of July, 1900, the Dallas Consolidated Electric Street Railway Company owned and operated an electric street railway system in the city of Dallas, carrying passengers from one portion of the city to another for hire. On that day J. M. Broadhurst desired to take passage on one of its street cars and attempted to board the same on Lamar street, between Elm street and Pacific avenue, for the purpose of going to the northern portion of the said city. While standing on the sidewalk on Lamar street he signaled the motorman of an approaching car to stop the car in order that he might take passage thereon. The motorman, in response to the signal, stopped the car just before reaching the crossing of the Texas & Pacific Railway. Broadhurst walked around the rear end of the car to the side and took hold of the handholds designed to aid passengers in getting on board the cars. He put one foot on the steps of the car and was in the act of getting aboard when he received an electric shock which fixed his grasp upon the handhold of the car, and while in this attitude the motorman started the car in motion and he was dragged some distance, when his hand relaxed his hold and he fell in the street. The shock made him unconscious, and he remained so until he was carried into a restaurant nearby and seated in a chair, when his consciousness returned. The electric shock and the violence suffered by having been dragged along by the car inflicted serious injuries upon him. He suffered great physical pain and mental anguish, and his nervous system was seriously disarranged and impaired. and he

sustained bruises along his spine and hip. He at the time was a man 26 years of age.

There is testimony that on the day of the accident one Luffman, in attempting to board this same car on Lamar street just north of where the plaintiff was injured, received a severe electric shock upon taking hold of the handholds for the purpose of boarding the car. The defendant introduced Henry Garrett as an expert electrician, who testified that car No. 63, the one on which the evidence shows plaintiff was hurt, is a Westinghouse construction car. It was bought in 1895 or 1896, and was a brand new car at that time. It was further stated that he regarded the Westinghouse street car as among the safest constructed. The motorman testified that he ran this car all the time, and that he was operating it the day prior to the accident, and that he never knew of a complaint being made of anyone getting an electric shock on the car. He testified that he remembered the occurrence of a man getting a fall from the rear of the car on Lamar street. He further testified that the proper and usual place for passengers to get on the car is on the other side of the railroad track; that it does not stop in the street before crossing the track for passengers unless people are getting on. There was no evidence as to the condition of the car at the time of the accident except such as is disclosed by the character of the accident itself. There was no evidence of any inspection of the machinery and appliances, and it is not shown that the condition of the car and appliances could not have been discovered by proper inspection. The witness Garrett did testify that the maximum current for propelling a street railway is 500 volts; if a person caught hold of a street car handrail on a wet day with one hand and one foot on the ground, he could get only a very small portion of the current. He further testified that there were several causes to produce a slight current on street cars; a little dirt on the track which would lift the wheel off the rail will cause the current to seek another ground and run off on some other part of the car; this could be caused by a little sand or dust on the track, and there is no way to prevent this unless the track is kept clean. He further testified that such a current would not be sufficient to kill a human being.

The first question to be considered is, are the circumstances attending the injury to the defendant in error sufficient to show negligence on the part of the railway company without direct proof of that fact? It is laid down by a recognized authority that: "The accident, the injury, and the circumstances under which they occurred are, in some cases, sufficient to raise a presumption of negligence, and thus cast upon the defendant the burden of establishing his freedom from fault. Proof of an injury occurring as the proximate result of an act of the defendant, which would not usually, if done with due care, have injured anyone, is enough to make out a presumption of negligence. When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things

does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." Shearm. & Redf. on Neg., sec. 59. In the case of Railway v. Lauricella, 87 Texas, 278, the plaintiff occupied the relation of passenger on one of defendant's trains. There was a derailment of the train upon which plaintiff was riding, and he was injured thereby. In that case it was said by the learned judge delivering the opinion of the court, that "It is a reasonable and sound doctrine that when a passenger is injured by an accident such as the derailment of the train at a place where the track and train are entirely under the control of the company,—that is to say, where they are not interfered with by any extraneous force,—a presumption of negligence arises, and in order for the company to exonerate itself from liability for the injury it must adduce evidence to show that the accident could not have been avoided by the exercise of the utmost care and foresight reasonably compatible with the prosecution of its business." The case of McCray v. Railway, 89 Texas, 169, was a case in which a brakeman was riding on a car loaded with steel rails. The train was running at the rate of twenty-five miles per hour when one of the steel rails fell from the car in front of the one on which the brakeman was sitting; one end of the rail struck the ground, the other end resting on the car, swept the whole side thereof, and struck the brakeman, killing him instantly. It was held that the circumstances surrounding the accident, in the absence of other proof of negligence in loading the cars, was sufficient to authorize the finding of negligence on the part of the company.

We are of the opinion that the circumstances surrounding the injury to Broadhurst were sufficient to raise a presumption of negligence on the part of the company. The handholds and steps of the car were designed to be used by passengers as aids in their entrance to or exit from the cars. The cars and their equipment were under the control and management of the defendant, and the accident was such as in the ordinary course of things would not happen with the use of proper care by those who have their management. In support of these views, see also Thiel v. Kennedy, 84 N. W. Rep., 657; Railway v. Cooper, 38 Law. Rep. Ann., 637; Howser v. Railway, 30 Apl., 907; Railway v. Wood, 63 S. W. Rep., 164; Whitt. Smith on Neg., 523.

Complaint is made of that portion of the charge in which the jury were told that: "The defendant owed to its passengers the duty of exercising great care and caution to keep the machinery and appliances of its cars in reasonable safe condition and repair, and to exercise like caution in the operation of its cars." The objection made to the above charge is that it imposes upon the defendant a higher degree of care than is required by law. In the case of Levy v. Campbell, 19 Southwestern Reporter, 438, the court charged that the defendant was required to use the "utmost care." This charge was held to be correct. In the case of Gallagher v. Bowie, 66 Texas, 265, the same expression,

"the utmost care," was used by the trial judge in the charge to the jury, and the charge was sustained as correct by our Supreme Court. In the latter case Justice Robertson says that "the degree of care required of carriers is generally described by the authorities as the utmost, and the use of this expression in the charge was not objectionable." In the case of Railway v. Smith, 87 Texas, 352, it was held that the expression "great care and prudence" was too high a degree of care in the case of an employe suing his master; that in such case the defendant is only required to use ordinary care. In discussing that expression used in the charge, the court said, speaking through Justice Brown: "This imposes the highest degree of care known to the law, which is that degree of care prescribed by law for the government of railroad companies toward their passengers." Citing Shearm. & Redf. on Neg., sec. 59; Railway v. Gorbett, 48 Texas, 573. In the Gorbett case, the language used in the charge was "greatest care and prudence." As to this charge Justice Gould said: "The charge required the greatest degree of care and prudence of defendant as being a carrier of passengers, and at the same time held defendant not responsible if the injury was the result of a mere accident or casualty, there being no want of care or skill on the part of the company or its agents." The charge was sustained and the judgment of the court below affirmed. In the case of Levy v. Campbell, above cited, it was held that the use of the term "utmost care" in the charge, without defining the same, was not error. It was also held that if any explanation of such expression was deemed necessary, a special charge should have been asked to that effect. In case of Gallagher v. Bowie, above cited, wherein the same expression, "utmost care," was used, Judge Robertson said: "If it needed explanation or qualification appellant should have requested a special charge." In the language quoted above from the Lauricella case, the degree of care due to a passenger by a carrier is stated to be "the utmost care and foresight reasonably compatible with the prosecution of its business." In the case at bar the charge required the exercise by the carrier of "great care and caution" in keeping its machinery in repair and in the operation of its cars. We are of the opinion that this charge does not impose a higher degree of care upon the carrier than is required by law.

Again, complaint is made of the court's failure to define the words "great care and caution" as used in the charge. If there was any error in this respect it was one of omission, and the plaintiff in error can not be heard to complain in the absence of a special charge designed to correct such omission.

Complaint is made of the action of the court in refusing a requested charge by defendant, as follows: "You are charged that if you find that plaintiff received an electric shock while attempting to board one of defendant's cars, then you are charged that if defendant, by the use of the highest care, could not have discovered the danger from electricity, and could not have prevented the same, then you can not presume

that defendant was guilty of negligence merely from the fact that plaintiff was so shocked, and can not find any damage for plaintiff resulting as a direct and proximate result of such electric shock, unless you find that the presence of such electricity in the handholds of said car was caused by some negligence of defendant." There was no error in refusing this charge, for the reason that there was no evidence authorizing the submission of the issue presented therein. The witness Garrett testified that the car was bought in 1895 or 1896, and that it was of an approved make. There was no evidence that at the time of the accident the car or its appliances was in proper condition, or that the danger from electricity could not have been discovered by the exercise of care. It is not shown that it had recently been inspected and found in good repair, or that there was any system of inspection in vogue by defendant.

Error is assigned to the action of the court in admitting, over the objection of the defendant, the evidence of the plaintiff's witness W. F. Luffman, in effect that he, witness, had undertaken, the day before the accident to plaintiff, to board the car from which the defendant claims to have fallen, at a point on the north side of the Texas & Pacific Railway tracks on Lamar street; that the car had started and was in motion when the witness undertook to board the same; that he caught the handhold in both hands and received an electric shock which nearly knocked him from said car; that this was car No. 63, and that on the same day he, witness, boarded this same car on San Jacinto street near the Baptist church, then catching hold with only one hand, and that at that time he received only a slight shock. This evidence was objected to as being immaterial, and because it referred to an electric shock received by a person other than plaintiff, and at a different time, at a different place on the track, and by a different current. The evidence was admissible as tending to show that the car and its equipment were not in proper condition and repair, and that the company knew or ought to have known of the fact by the use of proper diligence.

Complaint is made in the twelfth assignment of error of certain remarks made by the court during the trial, in the presence of the jury, relating to the plaintiff in error's counsel. Upon the trial and after defendant's counsel had closed with one of its witnesses, about 5:30 p. m., June 18th, the court asked counsel for defendant if they had any further evidence. Defendant's counsel replied that they had two more witnesses, to wit, Mr. Moore and Henry Garrett, and thereupon requested the court to adjourn until next morning, stating that the defendant would get through with them in as short a time as possible, and that they would offer no other testimony. These witnesses had been in attendance on the court, and were excused by defendant's counsel under the impression that they would not be needed that day. The next morning, being June 9th, the witnesses Moore and Garrett were present and each testified in the case. After they had concluded, defendant's counsel called other witnesses, whereupon the court reminded them of

what had occurred on the previous evening, to which defendant excepted. Thereupon the court remarked that it did not seem to him that counsel were treating the court fairly, but that if they insisted upon examining the witnesses they might do so, and thereupon counsel declined to examine said witnesses, taking a bill of exceptions to the court's remark that they had not treated the court fairly.   The exceptions to the remark shown by the bill of exceptions are:   "Because said conduct and remarks on the part of the trial court judge were, in effect a denial and an impairment of the right and privilege of this defendant to its day in court, and to the legitimate presentation of its defense by testimony before the jury hearing the same without molestation and hindrance; second, because said conduct and remarks on the part of the trial judge were, in effect, an unfavorable comment made in advance, in the hearing of the jury, upon the weight of such testimony as would have been given by said two witnesses; third, because said conduct and remarks on the part of the trial judge constituted an unjust and improper criticism and stricture of the conduct of defendant's counsel, prejudicially involving the rights of this defendant, and diminishing the effect and weight which should have been and would have been given the testimony of the said witnesses Oram and E. T. Moore, if said criticism and stricture had not been made; fourth, because said conduct and language of the trial judge was calculated to and did bring the counsel for defendant, and the defendant, into bad odor and disgrace and disrepute before the jury trying this cause, to the great prejudice of the defendant and its cause, and to greatly impair the weight of defendant's testimony and the argument of its counsel before said jury, and the defendant's counsel, under this odium and disadvantage, shortly afterwards proceeded to and did address the jury."

The action of the trial judge did not prevent counsel from introducing further testimony, and attached no limitation or restriction upon that right.   The counsel were told that they could proceed to examine the witnesses.   The remarks were in no way directed at the merits of the defense or at the testimony of any witnesses, but related solely to the action of the counsel in reference to the adjournment on the previous evening, when they stated that they would examine only two other witnesses.   The remarks did not convey any expression as to the views of the judge on the merits of the case, or any evidence before the jury. They were not of such character as to imply that counsel were dishonorable, or that they would resort to any improper conduct in the defense of the case.   There is nothing in the record to indicate that the remarks tended to prejudice the jury against defendant.   We conclude that no reversible error is shown by the above assignment.   Crapp v. Hauer, 16 Pac. Rep., 702; Hill v. Corcoran, 25 Pac. Rep., 174; Clowe v. Traction Co., 27 Atl. Rep., 1005; Fraim v. Insurance Co., 32 Atl. Rep., 616.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

Writ of error refused.