**OLIVER et al. v. FORNEY COTTON OIL & GINNING CO. (No. 8418.)**

(Court of Civil Appeals of Texas. Dallas. Jan. 8, 1921.)

**1. Nuisance ☜8—Cotton gin in industrial district held not restrainable.**

Special findings on sufficient evidence that the operation of defendant's cotton gin materially interfered with plaintiffs in the use and enjoyment of their homes, and that no equip-ment could be provided to eliminate such injury, did not require a judgment enjoining the gin as a nuisance, where the jury also found that the gin was within the part of the town set aside to gins and similar industries; that when plaintiffs acquired their respective properties they knew or by reasonable diligence could have known that a gin would be erected and operated there; that defendant acted reasonably in erecting, maintaining, and operating the gin in that location; that plaintiffs' properties were not impaired in market value or destroyed for the purposes of homes; that the gin did not jeopardize or seriously threaten their health or that of their families; that they could be reasonably compensated in money; that, though they knew of the purpose to construct the gins, they did not complain until it was practically completed, and that, if they had, it would not have been placed in that location; that defendant acquired property for gin purposes, and had used it for no other purpose; and that the plant was worth $20,000, and, if dismantled and removed, would not be worth over $12,000.

**2. Nuisance ☜23(1) — Injunction matter of discretion when conflicting rights are involved.**

In a suit to enjoin the maintenance and operation of a cotton gin, the conflicting rights of the parties in the respective uses of their properties being involved, the right to an injunction is not absolute, but rests in the sound discretion of the trial court.

**3. Nuisance ☜3(5)—Cotton gin held not restrainable at instance of inconvenienced home owners.**

The reasonable, careful, and justly warranted use of property for a cotton gin *held* not to be enjoined because there was necessarily incident to such use discomfort and inconvenience to nearby home owners.

**4. Nuisance ☜32—Exceptions to answer held properly overruled.**

In a suit to enjoin a cotton gin, exceptions to the answer alleging that the gin was a public necessity, that the agricultural interests of the community demanded it, that a prescriptive right had been acquired to erect it, that, though plaintiffs knew of the purpose to build it and that it was being built, they did not complain until it was nearly finished, and that since they had stood by while defendant spent $20,000, it would be inequitable to enjoin its operation, were properly overruled, though none of the allegations, standing alone, was sufficient to constitute a defense, as the case was one calling for a consideration of all facts, circumstances, and conditions.

**5. Appeal and error ☜1068(1)—Error in instruction harmless where jury made special findings and court applied law thereto.**

Where in a suit to enjoin a cotton gin as a nuisance the jury found the facts specially, and the court applied the law thereto and determined the question of nuisance, and an incorrect definition of nuisance could not have misled the jury in answering the special questions, an instruction erroneously defining a nuisance was harmless.

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Trial ⬥194(14) — Instruction that cotton gin was not nuisance as matter of law not on weight of testimony.**

In a suit for an injunction, an instruction that the operation and maintenance of a cotton gin was not a nuisance as a matter of law was not a comment on the weight of the testimony.

**7. Nuisance ⬥3(5)—Cotton gin not nuisance as matter of law.**

The operation and maintenance of a cotton gin is not a nuisance as a matter of law.

**8. Trial ⬥352(1)—Special issue as to whether cotton gin was in close proximity to part of town containing such industries not on weight of evidence.**

In a suit for an injunction, a special issue as to whether a cotton gin was within that part of the town set aside to gins and like industries "or in unreasonable proximity thereto" was not a comment on the weight of the evidence.

**9. Trial ⬥256(12)—Objection to instruction for failure to define terms without requesting explanatory charge is insufficient.**

While under Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, it is sufficient to call the court's attention to a positive error in the charge as therein provided, and it then stands as excepted to, a party thinking an expression in the charge requires explanation must request a special instruction defining it, and a mere objection is not sufficient.

**10. Trial ⬥219—"Reasonable proximity" did not require definition.**

Where a special issue required the jury to find whether a cotton gin was within the part of the town set aside to gins and like industries, or in "reasonable proximity thereto," the quoted words did not need to be defined, as they are words of ordinary use and without technical meaning and presumed to be as accurately understood by the jury as by the court.

**11. Trial ⬥349(3) — Submission of case on special issues without request held not error.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, expressly authorizing the trial court to submit cases on special issues, without request of either party, it was not error to so submit a suit to enjoin a cotton gin as a nuisance.

Error from District Court, Kaufman County; Joel R. Bond, Judge.

Suit by Frank Oliver and others against the Forney Cotton Oil & Ginning Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

Wynne & Wynne and H. R. Young, all of Kaufman, for plaintiffs in error.

Brooks, Worsham & Rollins, of Dallas, for defendant in error.

HAMILTON, J. This is a suit to enjoin a private nuisance brought by plaintiffs in error against defendant in error. The case was tried below before the court and a jury, and upon certain findings made by the jury in response to questions submitted by the judge judgment was entered for the defendant in error refusing to grant the injunction.

The plaintiffs in error owned lots in the town of Crandall and occupied them as homes. These various lots used as homes by the several plaintiffs in error were situated distances varying from 50 feet to 200 yards from the buildings in which the gin and its appurtenances were operated.

The gin was erected on a lot containing between two acres and three acres of land. Two other gins were located in the same vicinity. They were in a section of the town which seems to be properly designated as the ginning section, because of the fact that for many years—more than 20 years—gins had been operated in that immediate and particular vicinity. All the Crandall gins appear to be located in this area. Formerly for many years a gin had been located and operated by the defendant in error and its predecessors in title and operation on a different portion of the gin lot farther removed from the properties of the plaintiffs in error. Plaintiffs in error acquired their homes in close proximity to the tract of land upon which the gin is situated with knowledge that the block of less than three acres of land was being devoted to use of persons exclusively operating a gin upon it, to which use, as above stated, it had been devoted for a number of years, except that for a period of time a portion of it was set apart and used for a cotton yard.

At the close of the ginning season in 1917 defendant in error determined and announced that it would dismantle an old and dilapidated gin located, as aforesaid, upon a portion of the lot not so near to the homes of plaintiffs in error and construct a new, modern one. In the course of time this plan was put into execution and the gin was located, construction begun, and nearly completed without protest or complaint from any of the plaintiffs in error. The first complaint brought to the knowledge of defendant in error was in the form of the petition filed in this suit on the 6th day of June, 1918.

A temporary writ of injunction was issued in behalf of complainants, but upon motion of the defendant in error it was dissolved on July 27, 1918. Thereafter the gin was operated during the ginning season of 1918.

It was alleged that the operation of the gin was attended by annoying noises and vibrations, and that it emitted dust, dirt, and lint which came upon plaintiffs in error's premises in such quantities as to render impossible the occupancy of them in health and comfort, and also that large numbers of draft animals used in hauling to and from the gin stood upon the premises during the ginning season and deposited thereon filth from which noxious odors and gases arose and were

borne in the air to the homes of plaintiffs in error, impairing their comfort and endangering their health, and further that in this filth flies were propagated and spread to the homes of plaintiffs in error and threatened their health and the health of all their families.

The gin against which these allegations were directed appears to have been constructed upon a concrete foundation to prevent vibration and equipped with the best known of devices to prevent dust, dirt, etc., from escaping. The machinery was of the most modern type and was installed by skilled and experienced men. The gin is located in an agricultural district devoted to the production of cotton, and was, when constructed, a public necessity according to the facts established below.

[1] By their first and second specifications of error the plaintiffs in error charge that the judgment, according to the jury's answers of special issues, ought to have been for them instead of for defendant in error. Under these assignments they submit the following proposition:

"In a suit for injunction to restrain the operation of a nuisance, where the jury finds that its operation causes a substantial damage to plaintiffs' property and materially affects the plaintiffs in the enjoyment of their homes, and that the nuisance cannot be operated in a manner to prevent substantial injury to plaintiffs' property, it is error for the court to refuse to enter judgment restraining the operation of the nuisance."

This may be said to be a sound statement of law, abstractly and generally speaking, but we do not think it can be applied in this case to work an overturning of the judgment. While the jury did find that the operation of the gin materially interfered with the plaintiffs in the use and enjoyment of their homes, and also found that no equipment could be provided to eliminate the injury thus produced, and while the facts abundantly supported the finding, yet the jury also found all of the following facts: First, that the site of the gin is within the area in Crandall set aside to the location of gins and similar industries; second, that when plaintiffs acquired their respective properties, they knew, or by the use of reasonable diligence could have known, that a gin would be erected and operated where this one is; third, that defendant acted reasonably in erecting, maintaining, and operating the gin in its location; fourth, that plaintiffs' properties were not impaired in market value; fifth, that their respective properties had not been destroyed for the purposes of homes for themselves and their families; sixth, that the operation of the gin in its location did not jeopardize or seriously threaten the health of plaintiffs or that of their families; seventh, that plaintiffs could be reasonably compensated in money for the damage they will sustain;

eighth, that although plaintiffs knew of the purpose to construct the gin and knew it was being constructed, yet they did not complain until it was practically completed, and that, if they had complained to defendant in error, the gin would not have been located where it is. The jury found also that the defendant acquired the property eight years before suit for gin purposes, and purposes incidental thereto, and since then had used it for no other purpose. The jury also found the plant to be worth $20,000, and that, if dismantled and removed, it would not be worth more than $12,000.

[2] We are not able to enunciate a controlling rule to be applied to other cases, nor do we think any rule has ever been stated to which reference can be made for the governance of every specific case involving the question of the right to enjoin a nuisance per accidens, because each of such cases must be determined, in the exercise of discretion, upon the peculiar facts involved. But it is apparent that in cases of the nature of this, involving, as it does, the conflicting rights of the parties in the respective uses of their properties, the right to an injunction is not absolute, but rests in the sound discretion of the trial court, and, this being so, it was proper for the jury to ascertain and find the foregoing facts, and, such facts having been established by the jury's findings under evidence sufficiently supporting the findings, they are enough to sustain the judgment.

[3] That a person is entitled to enjoy his home free from material discomfort, annoyance, and injury occasioned by the unlawful use by another of his property cannot be controverted. This is a general and universal rule. But this rule cannot be invoked to prevent the reasonable, careful, and justly warranted use of property in a particular way because there is necessarily incident to that use discomfort and annoyance to home owners under all the circumstances appearing in the instant case. The material testimony in many essentials is about without conflict. The testimony of the plaintiffs in error clearly establishes the fact that occupants of their homes are subjected to annoyance and discomfort from the operation of the gin. And this testimony is hardly at all disputed. On the other hand, the evidence in behalf of defendant in error is plentifully sufficient to warrant the above stated findings of the jury in favor of defendants in error.

The evidence established a conflict of rights and interests to be adjusted by the practical judgment and sound discretion of the court and jury below. "As said in some of the authorities, there must, in such inquiries where rights and interests seem to conflict, be a balancing of them." Railway Co. v. Oakes, 94 Tex. 155, 58 S. W. 999, 52 L. R. A. 299, 86 Am. St. Rep. 835.

We believe the facts of this case are nearly enough similar to the facts of the case of Gil-

bert v. Showerman, 23 Mich. 450, to warrant supporting the judgment upon the authority of that case, in which the opinion was written by Mr. Justice Cooley. That was a suit to enjoin the operation of a flour mill in the business district of a city, and next door to a building used by the complaining party as a residence for himself and his family. In the course of the opinion Judge Cooley says:

"The question, therefore, in the case at bar must be whether there is anything in the nature of the case which renders it unreasonable, in view of the relative rights, interests, and wishes of both parties and the general welfare of the public, that defendants should continue upon their premises the business they are now engaged in, or whether, on the other hand, the resulting annoyance to the complainant must be regarded as one which is incident to the lawful enjoyment of property by another, and which, consequently, can form no basis for legal redress. And in considering this question the fact is to be kept in view that the business of the defendants is one which is lawful in itself and necessary to the community, and which the public good requires shall be carried on by some persons in some locality. The question is whether it be proper and right that it be carried on in the particular locality where it is now established. Even the most offensive trade, as we have seen, is allowed to be carried on in a remote place; and this means, not a place remote from all other occupations and trades, but remote from such other occupation or trade as would be specially injured or incommoded by its proximity; in other words, in a place which, in view of its offensive nature, is a proper and suitable one for its establishment. The most offensive trades are lawful, as well as the most wholesome and agreeable; and all that can be required of the men who shall engage in them is that due regard shall be had to fitness of locality. They shall not carry them on in a part of the town occupied mainly for dwellings, nor, on the other hand, shall the occupant of a dwelling in a part of the town already appropriated to such trades have a right to enjoin another coming in because of its offensive nature. Reason and a just regard to the rights and interests of the public require that in such case the enjoyments of pure air and agreeable surroundings for a home shall be sought in some other quarter; and a party cannot justly call upon the law to make that place suitable for his residence which was not so when he selected it. * * * We cannot shut our eyes to the obvious truth that, if the running of this mill can be enjoined, almost any manufactory in any of our cities can be enjoined upon similar reasons. Some resident must be incommoded or annoyed by almost any of them. In the heaviest business quarters and among the most offensive trades of every city will be found persons, who, from motives of convenience, economy, or necessity, have taken up there their abode; but in the administration of equitable police the greater and more general interests must be regarded rather than the inferior and special. The welfare of community cannot be otherwise subserved and its necessities provided for. Minor inconveniences must be remedied by actions for the recovery of damages rather than by the severe process of injunction." Gilbert v. Showerman, 23 Mich. 450.

But we need not look beyond our own jurisdiction for strong authority sustaining our views of the merits of the contention under consideration. In the case of Railway Co. v. De Groff, 102 Tex. 433, 118 S. W. 134, 21 L. R. A. (N. S.) 749, which was an action by a hotel keeper to restrain the use of a nearby street for switching purposes by a railroad company, the Supreme Court of Texas used this language:

"The question of issuing an injunction, under such state of facts, depends upon the circumstances, and it is the duty of the court to consider the relative injury to the plaintiffs by a continuance of the nuisance to that which would be inflicted upon the defendant and the public by granting and enforcing an injunction, and, if the injury to the plaintiffs appears to be greatly less in amount in comparison to that which will result to the railroad company and the public, then it is the duty of the court to deny the writ of injunction."

In the case of Strieber v. Ward, 196 S. W. 720, Chief Justice Fly, of the San Antonio Court of Civil Appeals, said:

"If a citizen builds his house near a railroad depot, in a locality rarely used for residence purposes, but set apart to all kinds of factories, warehouses, and machine shops, he must be content to endure the inconveniences and annoyances incident to such location."

And also:

"A gin is not a nuisance per se, even though erected in the immediate vicinity of residences. In this Southern country, filled with a rural population, which prospers or materially suffers in the same ratio that the cotton, one of the controlling products of the world, is productive or otherwise, the cotton gin, one of the greatest inventions of the age, could never be classed as a nuisance without ample evidence to place it in that undesirable class. Usually a cotton gin is a blessing in any Southern community to the farmer and producer, a necessity, and not a nuisance."

See, also, Sherman Gas & Electric Co.. v. Belden, 103 Tex. 59, 123 S. W. 119, 27 L. R. A. (N. S.) 237; Gose v. Coryell, 59 Tex. Civ. App. 504, 126 S. W. 1164; Railway Co. v. Oakes, 94 Tex. 155, 58 S. W. 999, 52 L. R. A. 293, 86 Am. St. Rep. 835; Windfall Mfg. Co. v. Patterson, 148 Ind. 414, 47 N. E. 2, 37 L. R. A. 381, 62 Am. St. Rep. 532; 29 Cyc. 1157, 1159.

[4] The third, fourth, fifth, sixth, seventh, and eighth assignments of error complain of the court's refusal to sustain plaintiffs in error's special exceptions to defendant in error's answer. These exceptions are to allegations made in the answer to the effect that the gin complained of was a public necessity; that the agricultural interests of the community demanded it; that a prescriptive right

had been acquired to erect it where it was; that, although the plaintiffs in error knew of the purpose to build the gin and knew it was being built, yet they never complained until the gin was nearly finished; and that, since they had stood by until defendant in error had spent $20,000 erecting the gin, it would be inequitable to enjoin its operation.

We think the action of the court in refusing to sustain the special exceptions was proper. While none of these allegations, standing alone, contained sufficient facts to constitute a defense or to overcome plaintiffs in error's right to relief against a nuisance, still the case was one which called for a consideration of all facts, circumstances, and conditions relating to the situation, since it was one to be disposed of in the exercise of sound discretion in determining whether or not the acts complained of were reasonable and fairly warranted. Railway Co. v. De Groff, 102 Tex. 433, 118 S. W. 138, 21 L. R. A. (N. S.) 749.

"While the right of habitation is one of great importance, and while the law should and does afford all reasonable protection to the home, still these high considerations do not, in all instances, override all others. Cotton is one of the most important products of this state, and cotton gins are absolutely essential to the welfare of that industry, and it cannot be a sound rule of public policy nor a just rule of law which would outlaw them or require their owners, no matter how much care may have been exercised and expense incurred in locating them, to move them elsewhere, merely because they result in some annoyance or discomfort to a family which has taken up its residence on adjacent property long after such gins have been located. * * * But in this case, where the severe remedy of injunction is sought, such relief should not be granted unless, in addition to the proof ordinarily necessary to establish the existence of a nuisance, it is made to appear that, in maintaining his gin at its present location, the defendant is acting unreasonably; and the question of the reasonableness of his conduct is a question of fact to be determined from all the testimony, including that heard on the former trial, and any other which may tend to show the expense or loss of abandoning the gin or removing it to some other locality free from similar objections by adjacent owners, and whether or not such other locality can be had at all." Gose v. Coryell, supra.

[5] The ninth assignment of error complains of the definition of a nuisance used in the charge. We do not commend the definition used by the trial court, but we cannot see that any harm was done plaintiffs in error as a result of it. The jury found the existence of certain facts in response to special issues, and the judge of the court himself applied the law to these findings and determined by the resulting judgment the question of nuisance. In view of this procedure, we would not be authorized to reverse the judgment because of any mere error in the definition. Defining a nuisance incorrectly, we think, could not have confused or misled the jury in answering the questions submitted; neither could defining a nuisance correctly have aided the jury in that process. Accordingly, conceding the error pointed out, yet under the circumstances it was harmless.

[6, 7] Plaintiffs in error by their tenth assignment of error complain of that portion of the charge wherein the court instructed the jury that the operation and maintenance of the gin was not a nuisance as a matter of law. They insist that this was a charge upon the weight of the evidence. This contention we hold to be wrong. This part of the charge was probably unnecessary, since it seems to us that it could have been of no aid to the jury in answering the special issues submitted. However, it was not a comment upon the weight of testimony, but was a correct statement of law.

The eleventh, twelfth, and thirteenth assignments of error concern the admission of testimony. The reasons for the objections urged by plaintiffs in error are fundamentally the same as those they urge in support of their special exceptions set out in their third, fourth, fifth, sixth, seventh, and eighth assignments of error already considered; and the reasons for overruling these latter assignments are the same as those for not sustaining the former.

[8] The first special issue submitted to the jury called upon them to say whether or not the gin was within the area of Crandall set aside to the location of gins and like industries, "or in reasonable proximity thereto." By their fourteenth assignment of error plaintiffs in error assert that the use of the above phrase set in quotation marks was on the weight of the evidence and contained misleading, confusing, and undefined terms. We are not advised as to how the language constitutes a comment on the weight of the evidence, and such vice is not manifested to us from a reading of the assignment.

[9] If any of the words needed to be defined and their meaning thereby clarified and made more certain, we believe plaintiffs in error were under the duty to present such definition in the form of a special charge, and that it was not enough for them merely to object to this portion of the charge. When there is positive error in any feature of a charge, the objecting party need only call the court's attention to it in the manner provided in article 1971, Vernon's Sayles' Texas Civ. Stats., and it then stands as excepted to; but, when a party to a suit deems an expression in a charge to require explanation to the jury, he must request a special instruction defining it, and, if this is not done, then on appeal the objection will be regarded as having been waived. San Antonio & A. P. Ry. Co. v. Ilse, 59 S. W. 564; Railway Co. v. Harper, 53 Tex. Civ. App. 614, 114 S. W. 1168,

1199; Arkansas Const. Co. v. Eugene, 20 Tex. Civ. App. 601, 50 S. W. 736; Dallas Consol. Elec. St. Ry. Co. v. Broadhurst, 28 Tex. Civ. App. 630, 68 S. W. 315.

[10] But we do not think the words "reasonable proximity" form an expression to be judicially defined. These are words of ordinary use. They are without technical meaning, and therefore the presumption ought to exist, it seems to us, that their meaning is as accurately understood by the jury as by the court. When a word is used in its popular sense and is one of common and ordinary use, the court is not required to undertake to define it. Railway Co. v. Ritchey, 49 Tex. Civ. App. 409, 108 S. W. 732; Railway Co. v. Elgin, 56 Tex. Civ. App. 573, 121 S. W. 577; Raley v. State, 47 Tex. Civ. App. 426, 105 S. W. 342.

[11] The fifteenth assignment of error complains of the action of the court in submitting the case to the jury upon special issues. without a request therefor by either party. The assignment is not well taken, because article 1984a, Vernon's Sayles' Stats., expressly authorizes the trial court to submit a cause upon special issues without request of either party. And in suits of this kind the submission of the case upon special issues has been commended to trial courts by some of the appellate courts. Gose v. Coryell, supra.

All the assignments of error are disposed of in the foregoing. We find no error to justify reversing the case, and accordingly the judgment will be affirmed.

Affirmed.