Rosser *vs.* Randolph.

ROSSER *VS* RANDOLPH.

1. Although formerly doubted, it has by recent decisions become a settled principle, that chancery will sustain a bill filed by an individual, to enjoin a nuisance,—which, although it affects *him*, is also public in its character ;—but as one of the transcendant powers of the court, it will be exercised sparingly.

2. And where the exercise of such a power is desired by a party, it must be satisfactorily shown, that the proposed erection will inflict an irreparable injury, incapable of being adequately compensated in damages ; or which threatens, materially, to impair the comfort of the existence of those living near it :— a strong and mischievous case of pressing necessity ; and therefore,

3. Where the erection of a mill would deprive a complainant of the use of a spring of water, and water of as good quality could not be procured by digging in its neighborhoood ; or the injury rendered the spring, could not be obviated, by a reasonable amount of labor,—the exercise of the jurisdiction of the court would be complete ; as no adequate compensation could be made, to the injured party, for such a privation ; and no one can be allowed to use his property in a manner, so seriously prejudicial to his neighbor ; but—

4. Where a complainant filed his bill stating, that R was about to erect, or had erected a mill which would affect, injuriously, the health of complainant's family, and that of the neighbors ; and also injure his spring ;—and it appeared from the testimony, that the health of the family was not impaired, and that by digging a ditch two hundred and fifty yards in length, the spring would be protected from the injurious effects caused by the mill,—chancery declined to interfere.

5. And chancery will not interfere in this extraordinary manner, to sustain or enforce even an undoubted right, capriciously, or pragmatically insisted on.

6. *It seems* that the legislative provisions on the subject of erect-

ing mills do not affect the common law right of the citizen; and any person may erect a mill on a stream of water running through his own land, without the necessity of an application to the County court. The right is exercised, however, at the peril of the proprietor, and the erection must not affect, injuriously, the rights of others.

Error to the Circuit court of Tuskaloosa county, exercising chancery jurisdiction.

Bill to abate a nuisance. In this case, the bill stated that complainant lived on Adams' creek, a tributary of Big Sandy creek, in said county; and that Benjamin F. Randolph had purchased of the United States, a tract of land lying on said creek, adjoining the lands of complainant, and had intimated his intention of building a saw-mill thereon, which complainant was apprehensive would destroy the health of the neighborhood, and put in imminent danger the lives of his family. That Robert Martin and Benjamin Rosser, junior, having older and better rights to the establishment of mills, had taken out writs of *ad quod damnum* for that purpose. That defendant had afterwards taken out a similar writ. All the writs were executed at the same time, and returned to the same special term of the County court, when the applications of Martin and Rosser were granted, and an order to that effect entered of record, and the application of defendant was discharged, and permission to build a mill at the place contemplated by defendant, absolutely refused. That notwithstanding the refusal of the application of defendant, he still persisted in his desire and intention of erecting a saw-mill and dam, on and across said Adams' creek, at the place he had in view when he made the application, a short distance above a spring of

complainant, and about four hundred yards from the residence of complainant, three-eighths of a mile from the residence of Alfred Massingale, three hundred yards from the residence of Josias Rosser, and about eight hundred yards from a negro quarter of said Robert Martin. That the dam which defendant must necessarily erect to make his contemplated mill effective, would back the water, and throw it over about five acres of bottom land, all of which was covered with forest trees and thick undergrowth, the decomposition of which, and the stagnation of water, would, in the opinion of complainant, and others, among whom was a physician of high reputation, whose advice had been obtained, produce disease, and endanger the lives of complainant's family. If said dam was built ten feet high, which was the height contemplated, it would back the water over the site where Rosser was authorised to build a mill, and when the water was let off, by the act of sawing, or otherwise, from a pond at defendant's site, caused by a dam of any effective height, the flood would impair by overflowing, if not wholly destroy, the mill-dam, &c. which Martin was authorised to erect. Such letting off of the water would also completely flood, overflow, ruin and render useless complainant's spring, situate on his land, two hundred and fifty yards below defendant's mill seat; which spring, if destroyed, would introduce disease and death into complainant's family, as it was the only spring complainant had on his land, and for the destruction of which, complainant could not be compensated. The mill of defendant was not called for or demanded by the wants of the neighborhood, &c. That

Rosser *vs.* Randolph.

defendant, notwithstanding the rejection of his application for the privilege to build a mill by the County court, and in violation of law, still persisted, and was going on to erect his contemplated mill, and had employed workmen, and procured materials for so doing, all of which was contrary to equity, &c.

The bill prayed for the writ of subpoena, and for an injunction to restrain defendant and his agents from erecting the mill, and also for abating the same if erected, &c.

Upon hearing the bill, the chancellor said—

The complainant complains of the intended acts of defendant, as creating a public and private nuisance. Chancery has jurisdiction to restrain the erection of private nuisances—Coulter vs Hunter, et al, (4 Rand. 58;) Van Bergen vs Van Bergen, (2 J. C. R. 272;) Lardner vs Newburgh, (2 J. C. R. 164, 165;) Corning vs Lowerre, (6 J. C. R. 439.) An injunction agreeably to the prayer of the bill of complainant, was therefore granted.

The answer of defendant admitted it to be true, that he had bought the lands for the express purpose of building a mill, and that it was situated in a large forest,— that the surrounding land was public land, poor and thinly settled, and of no value, except for the timber it contained. That he bought it at the request of the neighbors, who wanted a mill erected, as the neighboring mills could not supply the demand for lumber. That he had sued out a writ of *ad quod damnum*, in the execution of which, the jury had assessed the damages of complainant at twenty dollars, for the overflowing of his spring, and had found that the mill might be erected

7 P. 31

without overflowing the lands of others, with a dam of ten feet. The jury had also found, that the health of the neighborhood would not be materially annoyed by the erection of the mill; and the said sum of twenty dollars was allowed for cutting a ditch to obviate the overflowing of complainant's spring. That complainant, and also Benjamin Rosser, junior, and Robert Martin, were present, and the jury heard fully all their objections. That the writ was returned to the County court, in the absence of defendant, when complainant made himself a party, and the court had improvidently rejected the application of defendant, on the ground, that the health of the neighborhood would be annoyed, notwithstanding the finding of the jury to the contrary, as above stated.

After defendant had entered said land, for the purpose of erecting said mill, Benjamin Rosser, junior, a son of complainant, also entered a tract of land for the purpose of obstructing and interrupting defendant.—Defendant's writ of *ad quod damnum* was also prior in point of time to the writs of Rosser and Martin. That complainant was interested with Martin in the building of his mill, and that the apprehensions concerning the injury defendant's mill would do to the health of the neighborhood, were only colorable on the part of complainant, as the mills of Rosser and Martin would overflow the lands directly in front of complainant's house and near to him, and would much more probably induce ill health than the mill or dam of defendant. The answer denied that the mill of defendant could by any means affect, injuriously, the health of the neighborhood, or that the dam

Rosser *vs*. Randolph.

would overflow any other lands than his own, and averred that the mill would be a public benefit, and that its erection would be a violation of no law, and that the distances of the mill-site from the various residences, as mentioned in complainant's bill, were exaggerated, &c.

The defendant also demurred to such parts of the bill as were demurrable, and prayed to be dismissed, &c.

The evidence shewed that the mill of defendant was ninety rods north of the dwelling of complainant, and his spring one hundred yards off in the direction of the mill, which said spring was overflowed when the mill was in operation, and thereby greatly injured, and there was no other spring convenient to the dwelling house of complainant, from which he could be supplied. The extent of ground overflowed, was about three acres, thickly timbered, and the Fall previous, some of the members of complainant's family, and other persons in the neighborhood, had chills and fevers. The neighborhood had been previously very healthy, but there were four or five other mills now in the vicinity. None of the ill health of the neighborhood was, however, ascribed exclusively to defendant's mill. The mill was useful in the neighborhood for supplying lumber, and was wanted for that purpose. That the injury to the spring might be prevented by digging a ditch two hundred and fifty yards long, and four or five feet deep at the spring, and that water could be procured in the neighborhood by digging, and that defendant, in defiance of the injunction issued from the court, restraining him from proceeding in the erection of his contemplated mill, had actually completed its erection.

Rosser *vs.* Randolph.

The chancellor, upon hearing the bill, answer and testimony, decreed,—that that part of the bill which charged the mill to be a public nuisance, was not a suitable matter of equity jurisdiction. That touching the complaint of a private nuisance, or the injury done to complainant's spring, chancery never interfered even in case of private nuisances, unless where the injury complained of was irreparable in its character, and one for which no adequate remedy could be obtained at law. The case shewed that the injury to the spring might be remedied by digging a ditch around it. .

It was therefore ordered, adjudged and decreed, that the complainant's bill should be dismissed; but owing to the peculiar circumstances of the case, that the respondent should pay the costs.

And now, at the present term of the court, plaintiff came and said there was error in the proceedings and decree below, in this, to wit:

That the chancellor dismissed complainant's bill; and

That the decree ought to have been rendered in favor of complainant.

For all of which, plaintiff prayed a reversal of the decree.

*Crabb & Porter*, for plainiiff in error.
*Ellis & Peck*, contra.

ORMOND, J.—It was made a question at the bar, whether a bill could be filed by an individual to enjoin a nuisance, which, although it might affect him, was also public in its character; and whether the proper mode of proceeding, was not by information.

Rosser *vs.* Randolph.

Although in the case of the Attorney General vs the Utica Insurance Company, (2 Johns. Chan. Rep. 371,) this right is doubted by Chancellor Kent, and was formerly doubted in England, the question appears to be settled by the recent English decisions, and was so determined by this court, in the case of the State, ex rel. of the Mayor and Aldermen of Mobile, (5 Porter, 279.)

Notwithstanding the power of the chancellor to interfere by injunction, in the case of a private nuisance, is unquestionable—yet, it must be admitted, that the control thus exercised over an individual, in the use or enjoyment of his property, is one of the transcendant powers of the Court of chancery—a power necessary to be vested in the court for the security of all, but which should be cautiously and sparingly exercised.

It is difficult, if not impossible, to define, in advance, all the cases in which the court would be authorised thus to interfere; but it may be safely laid down as applicable to this class of cases, that it must be satisfactorily shown, that the proposed erection would inflict an irreparable injury, such an one as could not be adequately compensated in damages; or it must threaten materially to impair the comfort of the existence of those living near it, to entitle those aggrieved to the aid of the preventive justice of the law. But a clear and plain case must be made out.

Both in England and the United States, the Court of chancery is exceedingly unwilling to interfere by injunction, until the nuisance has been established by a trial at law.

In the case of Van Bergen vs Van Bergen, (3 Johns.

Rosser *vs.* Randolph.

Chan. Rep. 287,) Chancellor Kent thus states the law : " The cases in which chancery has interfered by injunction, to prevent or remove a private nuisance, are those in which the nuisance has been erected, to the prejudice or annoyance of a right which the other had long previously enjoyed. It must be a strong and mischievous case of pressing necessity, or the right must have been previously established at law, to entitle the party to call to his aid the jurisdiction of this court."

Again, in the same case, quoting the opinion of Lord Eldon with approbation, he puts the jurisdiction of the court upon the ground " of material injury, and of that special and troublesome mischief which required a preventive remedy, as well as a compensation in damages." To the same effect is the case of Wingfield vs Crenshaw, (4 Henn. & Munf. 474.) With this sound and lucid exposition of the law, we entirely agree, and will now proceed to apply its principles to this case.

The allegations of the bill, material to be stated, are, that the defendant was about erecting a mill near the dwelling of the complainant, and that the health of his family, and that of the neighborhood generally, would be thereby endangered—also, that the flow of water from the mill, while in operation, would drown and render valueless a spring on which he relied to furnish himself and his family with pure water. That the defendant had not procured an order of court, authorising him to erect the mill, and prays an injunction.

The injunction was granted, in the first instance, but the defendant, in defiance thereof, proceeded to build his mill, and put it in operation. Its effects on the health of

the complainant's family, and on his spring of water, are therefore susceptible of proof.

Many witnesses have been examined, but it does not appear from the testimony, that the health of the complainant's family has suffered by the erection of the mill. But it appears very conclusively, that whilst the mill is in operation, the spring of the complainant is overflowed by the rush of water about two feet, and continues so some short time after the mill stops;—and that the water of the spring is injured by the overflow of the creek, after it has subsided, from the sediment which is deposited. It also appears from the testimony, that by digging a ditch two hundred and fifty yards long, the spring will be protected from the overflow of the creek.

It was decided at the present term of this court, in the case of Hendrick vs Johnson, (6 Porter,) that the legislative provision, on the subject of the erection of mills and other water works, did not affect the common law right of the citizen. That any person has, without application to the judge of the County court, the right to erect a mill on a stream of water running through his land. This right he must exercise at his peril, and in such a manner as not to affect the rights of others.

The question, here, is not whether complainant is injured by the erection of the defendant's mill; but whether the injury is of such a character as to entitle him to the interposition of a Court of chancery.

If, by the erection of the defendant's mill, the complainant was deprived of the use of his spring of water, and water of as good quality could not be procured by digging in its neighborhood, or the overflow from the

creek obviated by a reasonable amount of labor, the jurisdiction of the Court of chancery would be complete—as no adequate compensation could be made for the privation of such an important element of existence as water; and no one should be allowed to use his property in a manner so prejudicial to his neighbor.

The spring appears to be situated almost in the bed of the creek, so that the smallest flood in the creek renders it useless. It however appears from the testimony, that by digging a ditch two hundred and fifty yards long, and some of the witnesses add, by making an embankment, the spring will be protected from the rise in the creek, caused by working the mill—and it does not appear but that a well could easily be had in its neighborhood. This being the case, we do not see on what principle the jurisdiction of a Court of chancery can be sustained. By the application of labor, the value of which can be ascertained, or which the defendant, if applied to, might be willing himself to do, the spring can be restored to its original state; thereby giving to complainant the full enjoyment of his spring of water, and at the same time securing to the defendant those rights which appertain to him as owner of the adjacent land. A Court of chancery will not interfere in this extraordinary manner, to sustain or enforce even a right capriciously insisted on.

It does not follow, that because the erection of the mill is a nuisance, for which the complainant may have an action on the case, that therefore he is entitled to the interposition of a Court of chancery—Attorney General vs Nichol, (16 Vesey, jr. 338.)

As already stated, to call into exercise the extraordinary power of the court, "*there must be a strong and mischievous case of pressing necessity.*" This does not seem to be one of these cases, but is one in which a court of law can afford full and adequate relief.

The decree of the court below is affirmed at the cost of the complainant in the court below, and in this court.