**BROWNING et al. v. HINERMAN et al.
(No. 9449.)**

(Court of Civil Appeals of Texas. Ft. Worth. April 17, 1920.)

1. **Injunction** ⚖️163(1)—**Dissolved where acts enjoined not injurious in view of meaning of word "requires" in statute.**

Court erred in overruling a motion to dissolve a preliminary injunction granted on a showing by plaintiffs that defendants were drilling for oil upon land to which plaintiffs held a lease, and that continued drilling might result in a dry hole, it not being alleged in fact that there was no oil under the land, or that it was plaintiff's present purpose to sell the lease; the term "requires" in Vernon's Sayles' Ann. Civ. St. 1914, art. 4643, providing for issuance of writs of injunction where it shall appear that the party applying is entitled to the relief demanded, and such relief, or any part thereof, requires the restraint of some act prejudicial to the applicant, being mandatory in its significance, and meaning "to have imperative need of."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Require.]

2. **Injunction** ⚖️12—**Not available to prevent conjectural threatened injuries.**

The extraordinary writ of injunction is not available to protect one from threatened injury which is purely conjectural.

3. **Injunction** ⚖️23—**Not granted where no immediate injury imminent and large injury to defendant.**

In an action where both parties are in good faith claiming title under oral leases, the defendant being in actual possession of the land, and no immediate injury to plaintiffs being threatened, an injunction to restrain defendant from drilling for oil will not be issued, where large injury may be done to defendant thereby.

4. **Evidence** ⚖️318(1), 370(4)—**Deposit slips and checks held hearsay, and erroneously introduced without proof that deposits were made.**

In an action involving the validity of oral leases, court erred in admitting in evidence deposit slips and checks relating to payments under a lease, without proof of the execution of

---

the deposit slips, and without proof by any one who personally knew that the deposit had in fact been made, the slips and checks being purely hearsay as to the opposite party, who had nothing to do with them, the parties claiming the land under different leases.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Action by T. J. Hinerman and others against R. R. Browning and others. From an order overruling a motion to dissolve a temporary injunction, defendants appeal. Reversed and preliminary injunction cancelled.

Burkett, Anderson & Orr, of Eastland, for appellants.

Scott, Brelsford & Smith, of Eastland, for appellees.

CONNER, C. J. This is an appeal from an order of the court refusing to dissolve a temporary writ of injunction theretofore issued upon the petition of the appellees T. J. Hinerman and C. A. Marshall, enjoining the appellant the Ranger-Caldwell Oil & Gas Company and others from the continued drilling of an oil well upon a tract of land situated in Eastland county, and described in the petition for injunction.

The record discloses that the appellees, plaintiffs below, instituted this suit in the district court on February 21, 1920, against R. R. Browning and the appellant company and others, alleging, in substance, that R. R. Browning was the owner of the tract of land in controversy on September 13, 1917, upon which date he, joined by his wife, executed and delivered to G. W. Rust and J. W. Rust an oil and gas lease for a period of five years, and as long thereafter as oil or gas should be found in paying quantities; that for a valuable consideration the Rusts assigned said lease to H. S. Taylor and Earl Bruce, who in turn later assigned the same to the plaintiffs, who, it was alleged, were the true owners of said lease at and before the filing of the petition.

It was further alleged that at a later date, to wit, August 1, 1919, the defendant R. R. Browning instituted suit in the district court of Eastland county against the Rusts and Earl Bruce to forfeit the lease originally given to the Rusts; that in said suit judgment was entered in favor of Browning in accordance with his prayer, declaring the lease to be of no further force and effect; that thereafter, on October 9th, Browning entered into a lease contract with the defendant Ranger-Caldwell Oil & Gas Company by virtue of which said company was asserting a claim of right. It was further alleged that the plaintiffs were not parties to said suit of Browning, nor bound by said decree, and that the judgment referred to, and the lease to the Ranger-Caldwell Oil & Gas Company, had been spread upon the records of the county, and constituted a cloud upon the title of the plaintiffs, and they prayed for the cancellation of said records and an establishment of their title.

Yet later on, to wit, March 19, 1920, the appellees Hinerman and Marshall presented to the court their petition for an injunction, in which it was alleged, as in their original petition, that they were the owners of the leasehold interest, and of all the oil and gas and other minerals underlying the land in question, and that the defendants "without any right thereunto, and without permission or authority from the plaintiffs and over their protest, entered upon the premises for the purpose of drilling for oil and gas, and had moved thereon tools, machinery, and supplies necessary for such operations, and were in fact now drilling a well or wells thereon for the purpose of discovering, producing, and selling such oil, gas, or other minerals that may be found by reason of such operation." The following further allegations were then made:

"The plaintiffs are informed and believe, and upon such information and belief allege the fact to be, that the defendants, and each of them, intend to and will, if not prevented by your honor's gracious writ of injunction, continue said drilling operations until oil and gas, or either of them (if any is therein contained), are found in paying quantities, and in such event will take such oil and gas from said wells for the use and benefit of the defendants, and thereby deprive the plaintiffs of the value thereof."

The plaintiffs therefore prayed that the defendants be cited, and that they be enjoined from a further prosecution of the drilling operations and for general and special relief. This petition was duly verified by the appellee Hinerman, and thereon, on the same date the petition for injunction was filed, the district judge indorsed the order for the issuance of the writ as prayed for. Following the issuance of the writ, on, to wit, April 2d, the Ranger-Caldwell Oil & Gas Company, the appellant Browning having theretofore answered, filed its first amended original answer and amended original motion to dissolve the injunction. Exceptions were presented to the original petition for injunction, grounds of forfeiture of the lease to the Rusts averred, and allegations made to the effect that they were lessees of Browning for a valuable consideration and in good faith, having paid $10,000 in cash, after having been furnished with an abstract of title which failed to show any title in the plaintiffs, and that their drilling operations were under and by virtue of the lease from Browning so acquired. The motion further averred that the injunction should be dissolved for the reason that they were subject to a penalty of $100 a day for a cessation of drilling operations, and that they would be irreparably injured if required to await

a determination of the merits relating to the claims of title. It was further averred that the defendant oil company had already expended about $50,000 in the drilling, which was practically all of its money and means, and defendant offered to make any bond that should be required by the court to protect the plaintiffs from a loss should the well be completed and oil developed. The motion to dissolve was also duly verified. The plaintiffs thereupon filed an amended petition for injunction, which was substantially as their original petition for injunction, with the following additional allegations, viz.:

"The plaintiffs are informed and believe, and upon such information and belief allege the fact to be, that the defendants, and each of them, intend to and will, if not prevented by your honor's gracious writ of injunction, continue said drilling operations until oil and gas, or either of them (if any is therein contained), are found in paying quantities, and in such event will take such oil and gas from said wells for the use and benefit of the defendants, and thereby deprive the plaintiffs of the value thereof. (In this connection the plaintiffs aver that they paid a large sum of money for said lease, and that said lease at this time is very valuable as such; that if the defendants are permitted to complete the well they are now drilling on said premises, and such well should be completed as a dry hole, and should thereby prove, or tend to prove, that said land contains neither oil nor gas in paying quantities, such condition would result in the total destruction of the value of plaintiffs' lease, and plaintiffs would thereby be prevented from selling said lease, which they could do so long as said land is not proven to be without oil or gas in paying quantities; that, if said lands shall not be disproven, the plaintiffs will be able to sell their said lease for the sum of approximately $40,000. Plaintiffs further aver that if defendants are permitted to continue drilling said well, and to complete the same and take the oil therefrom as above alleged, such action on their part will have the effect of totally destroying the subject-matter of this suit, and will render plaintiffs' lease valueless to them."

The court heard the petition for injunction and answer thereto, and the evidence submitted by the parties, and overruled the motion to dissolve, from which order appeal has been duly prosecuted, as stated in the beginning of the opinion.

[1, 2] Appellants present numerous assignments of error urging the insufficiency of the petition for injunction in various particulars and the insufficiency of the evidence to support the order overruling the motion to dissolve. We will not take up these assignments in detail, as to do so would be to unnecessarily extend this opinion. We think it sufficient to say that the petition for injunction, the answer thereto, and evidence, have all been carefully and duly considered and, in our judgment, neither as alleged nor as proven, do appellees show such right as to authorize the original issuance of the writ of injunc-tion, or to authorize its further continued operation.

Our statute on the subject of injunction (article 4643, V. S. Tex. Civ. Stats.), so far as now pertinent, thus reads:

"Judges of the district and county courts shall, either in term time or vacation, hear and determine all applications and may grant writs of injunctions returnable to said courts in the following cases:

"(1) Where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief or any part thereof requires the restraint of some act prejudicial to the applicant."

It is to be noted that to authorize the writ it must not only appear that the applicant is entitled to the relief he demands, but also that such relief requires the restraint of some act prejudicial to the applicant. The term "require" is mandatory in its significance. Mr. Webster gives, as one of its definitions, "to have imperative need of." And this is in accord with the general principle of equity on the subject. Mr. High on Injunction, vol. 1, § 9, p. 9, says:

"Substantial and positive injury must always be made to appear to the satisfaction of a court of equity before it will grant an injunction, and acts which, though irregular and unauthorized, can have no injurious result constitute no ground for the relief."

This principle, embodied in the statute and so announced as a rule of equity, may be illustrated by the opinion in the case of Lutcher et al. v. Norsworthy et al., 27 S. W. 630. As stated by the court, that was a case in which suit had been instituted to restrain by injunction the appellants from building a wire fence upon the land of appellees of which they alleged themselves to be in the actual possession, and which they averred they were using as a rice farm, and to recover damages for the trespass. The court held that the petition stated a good cause of action for damages, but in relation to the writ of injunction stated:

"The mere fact that one person is about to trespass upon the land of another does not authorize the issuance of the writ. It is only in exceptional cases that a court of equity will interfere by its process to restrain a trespass. (Citing cases.) The facts, to call for the interposition of equity to prevent irreparable injury, should be fully and distinctly set forth."

Bearing in mind the essential element indicated by the statute and authorities cited, we fail to see from the face of appellees' original petition for injunction, the material parts of which we have set forth, injury of any material character that can or does arise from the mere drilling upon the land in controversy, even though it be conceded that appellees are the lawful owners of the leasehold interest and that appellant is without

real right. Appellees do not allege that they were in possession, nor had property thereon that was being injured or interfered with by the appellant company, or that they desired themselves to immediately develop the land by drilling, and that therefore immediate possession was necessary to them, or that appellant's drilling would prejudicially affect or impede them in the prosecution of their suit to determine the merits of the title.

Nor do we think the additional allegations in their amended petition for injunction, which we have quoted, strengthened appellees' case for injunction. The threatened injuries appellees therein undertake to display evidently present possibilities only. It is not alleged that the continued drilling by appellant would in fact result in a dry hole. It is not alleged that in fact there is no oil under the land which will be developed by the continued drilling, nor is it alleged that appellees are without purpose to ultimately develop the land themselves, or that their present purpose is to at this time sell the lease without development, or that they have any offers from proposed purchasers which are, or may be, prejudicially affected by appellant's continued drilling. In other words, it seems plain that the threatened injuries of which appellees complain, as stated in their amended petition, are purely conjectural, and for injuries of that character the extraordinary writ of injunction is not available. Of this character of complaint our Supreme Court in the case of Dunn v. City of Austin, 77 Tex. 139, loc. cit. 143, 11 S. W. 1125, 1127, quoted with approval the following:

"When the matter complained of is not in itself a nuisance, when it is not in its very nature hurtful to others, when it does not of necessity threaten to impair materially the health and comfort of those who may live near it, and the fact that it is a nuisance has not been established at law, the court abstains from interference, unless a case of pressing necessity is shown by the bill and by the proof. Bosser v. Randolph, 7 Porter, 238. 'Nor will the court interfere when the thing complained of is not in existence, but may be called into existence by threatened acts of the defendant in the exercise of his lawful dominion over his property, and it is uncertain, dependent on the circumstances in the future, whether it will or not operate injuriously.'" Citing numerous authorities.

On the same subject the author of Ruling Case Law, p. 321, § 20, says:

[3] "Courts of equity will not exercise this power to allay mere apprehensions of injury, but only where the injury is imminent and irreparable. Nor will they act where the purpose is merely the enforcement of right or prevention of wrong in the abstract, or, as a general rule when legal questions alone are involved." See, also, Kerr v. Riddle, 31 S. W. 328.

See, also, Southern Oil Corporation v. Waggoner, 224 S. W. 230, this day decided by us, and in which Mr. Justice Buck treats the same subject in a very clear manner.

It follows that the writ of injunction in this case is not supported by the pleadings, but, if by any possibility we could be mistaken in this view of the pleadings, the writ is unsupported by sufficient evidence. Appellees allege that they are the owners, and as their title aver an assignment of a lease from Bruce and Taylor, who, it is charged, acquired title by regular assignment from the Rusts, but we have entirely failed to find any evidence that supports this allegation. In other words, so far as our examination of the statement of facts enables us to determine, appellees have no paper connection with the title emanating from the original lessor, Browning. On the oral submission of this case, however, reference in argument was made from which it is possible to infer that appellees do claim under a transfer from Bruce and Taylor; but even if this be true, as we construe the record, the case is one in which both parties in good faith are claiming the title, and in which appellant is in the actual possession, and in which no immediate injury to appellees is threatened, and in which, should appellant's operations be restrained, large injury may be done to him. In the case of Matagorda Canal Co. v. Markham Irr. Co. 154 S. W. 1176, loc. cit. 1179, par. 4, the Court of Civil Appeals at Galveston thus states the rule in equity under such circumstances:

"It is a well-settled rule of equity that, if it appears to the judge that more damage is likely to occur by granting a temporary injunction than by refusing it, such injunction should not be granted. On the other hand, if greater injury will occur by refusing than by granting the writ, any doubt as to the right of the applicant should be solved in his favor." 1 Joyce on Injunction, § 20.

See, also, Jeff Chaison Town-Site Co. v. McFaddin, Wiess & Kyle Land Co., 56 Tex. Civ. App. 611, 121 S. W. 716. See, also, what this court had occasion to say on this subject under somewhat similar circumstances in the case of T. P. C. & O. Co. v. Howard, 212 S. W. 735: If in fact a further prosecution of the enterprise by appellant shall result in the production of oil, as, indeed, seems probable from the evidence, and appellant thereupon begins the appropriation of such oil, the court below may then make such proper orders and require such safeguards as will fully protect the interest of all parties until the final determination of the merits of the case, and our ruling now is not intended to go beyond the allegations and evidence now before us.

[4] An issue was raised on a hearing of the motion of whether the ground rentals provided for in the lease from Browning to the Rusts had been paid as in said lease speci-

fied in order to prevent its forfeiture, and appellees offered in evidence what purported to be bank deposit slips and checks showing that such payments had in fact been made. As to the payment due under the terms of the Rust lease on September 13, 1918, the lessor Browning acknowledged that he had received that money, but he denied having received the rentals due September, 1919, and we think the court erred in admitting the deposit slips and checks relating to the 1918 payment over the objection of appellant without proof of the execution of the deposit slips, and without proof by any one who personally knew that the deposits had in fact been made. As to appellant, the slips and checks were purely hearsay.

Appellant presents the further contention that the original lease from .Browning to the Rusts is absolutely void, under article 16, § 50, of the Constitution. It is undisputed that the premises in controversy constituted the homestead of Browning and wife at all times herein mentioned, and the section of the Constitution cited, among other things, provides that "all pretended sales of the homestead involving any condition of defeasance shall be void." The insistence is that, inasmuch as the lease to the Rusts contained a surrender clause, it constituted a defeasance within the meaning of the words of the Constitution quoted. We have concluded, however, that a decision of this question is not necessary to the present appeal, and that the force, if any, of the contention may be more fully developed and more substantially determined in the trial upon the merits.

We conclude that the judgment below should be reversed, the preliminary injunction heretofore issued should be cancelled and set aside, and that this opinion should be certified to the court below for observance.