## SOUTHERN OIL CORPORATION v. WAGGONER. (No. 9416.)

(Court of Civil Appeals of Texas. Ft. Worth. April 17, 1920.)

1. **Mines and minerals** <span>&#x269C;</span>52—**Evidence insufficient to show alleged threatened injuries to oil lands.**

In an action against an oil company to restrain it from taking plaintiff's share of oil of certain lands, evidence *held* not to show that there was any threatened future use of plaintiff's oil.

2. **Injunction** <span>&#x269C;</span>11—**Power not granted to allay mere apprehension of injury.**

Courts of equity will not exercise their power to restrain acts to allay mere apprehension of injury, but only where the injury is imminent and irreparable.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Action by· R. M. Waggoner against the Southern Oil Corporation. Judgment for plaintiff, and defendant appeals. Reversed.

Wm. J. Kerne, of Ft. Worth, and R. E. Gish, of Kansas City, Mo., for appellant.

Weeks, Morrow, Weeks & Francis, of Wichita Falls, for appellee.

BUCK, J. R. M. Waggoner, on February 7, 1920, filed his original petition in the district court of Wichita county, alleging that he was the owner of the one-eighth royalty under the oil and gas leases outstanding on

blocks 84, 85, 86, and 87, Red River Valley Lands Subdivision, Wichita county, Tex.; that the defendant, Southern Oil Corporation, had appropriated to its own use and benefit a large amount of his oil taken from said described blocks of land; and that it was now taking and would continue to take said oil, if not prevented by an injunction. Plaintiff further alleged that he had sued the defendant for the value of the oil already taken by it, but that defendant had refused to account to plaintiff for the market value of said oil which had been taken; that plaintiff desired to store his said oil, and to hold the same for higher markets and to use it for his refinery.

Defendant filed an answer, consisting of a general demurrer, a general denial, and a special answer, denying that it had taken any oil belonging to the plaintiff since January 5, 1920, or that it had any intention of taking any oil belonging to the plaintiff in the future. The defendant alleged that it had been sued by plaintiff in the United States District Court for the Northern district of Texas for the alleged conversion of oil belonging to plaintiff, and that defendant had not taken any oil since the filing of said suit.

The cause came on for hearing on February 21, 1920, and, all parties being present and evidence having been heard, the court granted a temporary injunction against the defendant, restraining and enjoining it from taking or appropriating any of the oil belonging to plaintiff and produced from blocks 84, 85, 86, and 87. The defendant has appealed to this court.

The evidence shows that the lessees of the land, aforedescribed and owned by plaintiff, had sold the oil of their wells to the defendant, and for a lower price than plaintiff was willing to take for his royalty. Plaintiff testified that the defendant was taking and purchasing oil during the fall and winter of 1919, and some in January, 1920, and that in so doing it took the one-eighth royalty belonging to him; that plaintiff had made no contract with defendant to sell his oil, and was not willing to accept the price agreed upon between defendant and the lessees; that on January 29, 1920, plaintiff had instituted in the federal court a suit against defendant for the conversion of the oil. Plaintiff testified:

"I have no record of any runs by the defendant from this land or any part of this land after January 5, 1920, and I do not know personally whether any oil has been run by the defendant after that time. I do not have any personal knowledge as to whether the defendant run oil from any of my lands hereinbefore mentioned after January 29, 1920, nor do I know whether we (they) were running oil from said land at the time of filing the petition herein. I had told the defendants, or one of their

<span>&#x269C;</span>For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

representatives, some time in December, not to take any more of my share of the oil. Some time after this I may have had a conversation with Mr. Williams, the superintendent of the Southern Oil Corporation, in which Mr. Williams asked me what to do with or where to put my share of the oil. As I remember it, I referred him to Mr. Weeks, my attorney."

W. F. Weeks, attorney for plaintiff, testified that on November 26, 1919, he received a letter from the defendant stating that it would agree to pay to the plaintiff the same price for his oil as it was paying under contract with the operators of the oil and gas leases on said lands, and that if such price was not satisfactory it would deliver to Mr. Waggoner his share of the oil on the leases into such storage or pipe line connections as Mr. Waggoner might furnish and designate; that said letter requested Mr. Waggoner, in case he did not accept their price at once, to notify the Southern Oil Corporation of the disposition it should make of his oil and to designate the storage or pipe line connections into which same could be run; that on December 20th he wrote a letter to the Southern Oil Corporation, addressed to Tulsa, Okl., advising that it could connect with the pipe line of the American Refining Company or the Texas Company anywhere in Wichita county; that the defendant failed to deliver said oil and has failed to do so up until the time of filing this petition; that he told the attorney for the defendant that he was not trying to prevent the latter company from taking the operators' share of the oil, but merely from taking the plaintiff's portion; that said attorney told the witness that the defendant would either have to build storage to handle the royalty oil, which he contended it was not obliged to do, or quit running the oil of the lessees or operators, unless plaintiff provided storage or furnished connections; that he advised said attorney that his client was looking to the lessees or operators, under the terms of his lease, to provide storage or pipe line connections, and that the defendant must see that the lessees did so. This is the only testimony on behalf of plaintiff.

A. N. Williams, testifying for the defendant, said that he was the local superintendent of the defendant company; that during November, 1919, the defendant had contracted for the purchase of the oil with two lessees, and that they completed the running of the oil from one of these lessees on November 29, 1919; that in December, 1919, they were taking oil from the other of the lessees, and that they thought they had run enough to complete their contract during December, but that upon checking up their runs they found a small shortage and ran the balance of the contract represented by this shortage between the 2d and 5th of January; that this was the last and only oil taken by the Southern Oil Corporation from any of the lands in question; that the letter written by Mr. Weeks and directed to their Tulsa office was a considerable time in reaching him at Wichita Falls, and that he did not receive it until after the company had gotten all of the oil for which they contracted; that he called upon Mr. Waggoner to furnish him with information as to where to put his oil, as well as necessary authority and directions for connecting up with any other pipe line or storage; that Mr. Waggoner referred him to Mr. Weeks, and that he called at Mr. Weeks' office several times; at one time he was sick and out of his office, and at another time he saw him; and that Weeks said he would notify him in a few days, but he did not do so. He further testified that, while the pipe lines of the defendant company were laid in and across plaintiff's land, it was not their intention to take any oil from the lands; that the defendant company might in the future want to purchase and run oil under contracts with other lessees of said lands, but that in the event it should do so, which the witness did not testify it would, it would expect to deliver to Mr. Waggoner his share of the oil, provided that he did not agree to sell to the defendant, and that he did give the defendant the necessary directions what to do with it, or that it would be glad to let Mr. Waggoner and the lessees make such arrangement for the handling of the oil as suited them.

Appellee has filed a motion to dismiss this appeal because of certain defects in the appeal bond, but appellant has filed another appeal bond, which we think meets the requirements of the law; therefore we overrule appellee's motion to dismiss the appeal.

[1] We do not think that the evidence introduced in the court below supports the plaintiff's allegations in his petition. It is not shown by plaintiff that the defendant would continue to use his oil, if not prevented by injunction, and the evidence of the defendant's superintendent is to the effect that defendant has not used any of plaintiff's oil since the filing of the suit in the federal court, January 29, 1920, and that it has no contract with the lessees of plaintiff's lands for any more oil; that if in the future it should desire to make a contract with plaintiff's lessees it would either arrange with plaintiff to purchase his royalty at an agreed price, or would place such royalty in storage tanks or pipe lines as requested by plaintiff, or would rely on plaintiff's arrangement with such lessees as to the disposition to make of his one-eighth royalty.

[2] The appellant further contends that the testimony of Williams as to any future contract with the lessees of plaintiff was merely the independent opinion of witness, and that the defendant is a corporation with a board of directors, a president, vice president, and a general manager, and that Williams does not occupy such a position as would authorize him to bind the defendant in regard to taking oil from the plaintiff's land. But we con-

clude that, taking the testimony of Williams in its strongest sense, it does not show that the defendant has any intention of taking any more oil from plaintiff's lands, unless satisfactory arrangements can be made with plaintiff. In 14 R. C. L. p. 321, § 20, it is said:

"Courts of equity will not exercise this power to allay mere apprehension of injury, but, only where the injury is imminent and irreparable."

On page 354, § 57, of the same volume, it is said:

"A mere apprehension of future injury is not enough to warrant the issuance of a permanent injunction; it must appear to the satisfaction of the court that such apprehension is well grounded, that is, a reasonable probability that a real injury, for which there is no adequate remedy at law, will occur if the injunction be not granted."

In 16 A. & E. Enc. Law (2d Ed.) p. 361, subd. (c), the rule is stated:

"The court cannot grant an injunction to allay the fears and apprehensions of individuals. They must show the court that the acts against which they ask for protection are not only threatened, but will in all probability be committed to their injury."

In the case of Kerr v. Riddle, 31 S. W. 328, this court, speaking through Justice Stephens, says:

"Nor do the mere apprehensions and fears of complainant, unsustained by facts establishing their probability, constitute a sufficient ground to warrant the interference of equity by injunction, since such fears may exist without any substantial reason. Not the complainant, therefore, but the court, must be satisfied that a wrong is about to be committed which will be irreparable in its nature, before the relief will be allowed."

We conclude that the judgment below should be reversed and that the writ should be dismissed; and it is so ordered.