**LONE STAR GAS CO. v. CHILDRESS et ux.**

No. 2638.

*Court of Civil Appeals of Texas. Waco.*

May 17, 1945.

Conner & Conner, of Eastland, and Marshall Newcomb, Warren J. Collins, and J. L. Toone, all of Dallas, for appellant.

Turner & Seaberry, of Eastland, for appellee.

TIREY, Justice.

The plaintiffs brought this suit against the defendant to recover certain items of damage alleged to have been done by defendant when it removed one of its pipe lines from their land and to enjoin defendant from using any portion of their land "not included in defendant's right-of-way and from using any gate or gates owned by the plaintiffs and not located upon the right-of-way, and from using any portion of said premises for any purpose not contemplated by the right-of-way deed or deeds." A jury failed to reach a verdict and a mistrial resulted. The parties then agreed to submit the case to the trial court upon the record made during the jury trial.

The court rendered judgment in favor of plaintiffs and found in the judgment substantially (1) that plaintiffs should recover from defendant the sum of $500 for damages; and (2) that "a strip of land thirty feet wide for each right-of-way grant will be sufficient and reasonable for all use by the defendant under its easements, that plaintiffs have no adequate remedy at law in the premises, and that the writ of injunction prayed for by plaintiffs should issue as herein decreed." The court awarded the $500 to plaintiffs, with interest and costs, and permanently enjoined defendant from using under its right-of-way grants (and specifically referred to instruments evidencing such grants and the recording thereof) "a strip of land in excess of thirty feet in width constituting each right-of-way in all of its operations thereon; said defendant, its agents and employees, are further permanently enjoined from using any gate or gates owned by the plaintiffs and not located upon defendant's aforesaid rights-of-way." No request was made for findings of fact and conclusions of law and none was filed.

Points 1 to 5 inclusive assail the judgment substantially to the effect that the court erred in finding that a strip of land thirty feet wide for each right-of-way granted will be sufficient for all use by the defendant under its easements; that plaintiffs have no adequate remedy at law in the premises, and that the writ of injunction should issue; and in permanently enjoining defendant from using a strip of land in excess of thirty feet in width; and in permanently enjoining defendant from using fence gates located on the lands covered by defendant's right-of-way deeds but not located upon such thirty foot strip; that such decree in effect reforms the right-of-way deeds and that the pleadings do not warrant or support the reformation. We sustain these contentions.

The defendant, by right-of-way deeds, duly recorded, acquired the right to construct, maintain and operate pipe lines as well as telegraph and telephone lines in connection therewith and to build future pipe and telegraph and telephone lines over and through the land in question prior to the time of the purchase of any part of the lands by the plaintiffs. Defendant constructed two pipe lines, one 10 inches and the other twelve inches in diameter, and telephone wires over said property prior to the time plaintiffs acquired the same. The provisions of said right-of-way deeds are identical except as to grantors, consideration and description of the land covered. We quote the pertinent parts of one of the deeds:

"That for and in consideration of Thirty and 50/100 ($30.50) Dollars to the undersigned, J. M. Ray and wife, L. V. Ray (herein styled Grantor, whether one or more) paid, the receipt of which is hereby acknowledged, the said Grantor does hereby Grant, Sell and Convey unto Lone Star Gas Company, a corporation (herein styled Grantee), its successors and assigns, the right of way and easement to construct, maintain and operate pipe lines and appurtenances thereto, and to construct, maintain and operate telegraph and telephone lines in connection therewith, together with the necessary poles, guy wires and anchors, over and through the following described lands situate in Eastland County, State of Texas, to-wit: 670 acres, more or less, out of Section 53, Block 4, H. & T. C. RR. Co., survey and being the same land more fully described in deed from A. F. Bentley to R. W. Higginbotham recorded in Volume 84, page 74, Deed Records of said County, to which reference is here made for further description.

"To have and to hold unto said Grantee, its successors and assigns, so long as such lines and appurtenances thereto shall be maintained, with ingress to and egress from the premises, for the purpose of constructing, inspecting, repairing, maintaining, and replacing the property of Grantee above described, and the removal of such at will, in whole or in part.

"The said Grantor is to fully use and enjoy the said premises except for the purposes hereinbefore granted to the said Grantee, which hereby agrees to bury all pipes to a sufficient depth so as not to interfere with cultivation of soil and to pay any damages which may arise to growing crops or fences from the construction, maintenance and operation of said pipe, telegraph and telephone lines; said damages, if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one thereof to be appointed by the said Grantor, one by the said Grantee, and the third by the two so appointed as aforesaid, and the written award of such three persons shall be final and conclusive. Should more than one pipe line be laid under this grant at any time, the sum of twenty-five cents per lineal rod for each additional line shall be paid, besides the damages above provided for.

"Upon written application to the Grantee at Dallas, Texas, the Grantee will make or cause to be made a tap on any gas pipe line constructed by Grantee on Grantor's premises for the purpose of supplying gas to the Grantor for domestic use only, the cost of meter, saddle and labor to be borne by said Grantee, all other expenses, including fittings to be borne by Grantor, gas to be measured and furnished at the main line of Grantee at the same price and under the same rules and regulations as prevail in the nearest city or town where Grantee is supplying gas.

"The consideration first above recited as being paid to Grantor by Grantee is in full satisfaction of every right hereby granted. All covenants and agreements herein contained shall extend to and be binding upon the respective heirs, legal representatives, successors and assigns of the parties hereto.

"It is hereby understood that the party securing this grant in behalf of Grantee is without authority to make any covenant or agreement not herein expressed."

In November 1942, defendant began the removal of the twelve inch pipe line. Plaintiffs were living on the ranch from which the pipe line was removed and they had actual notice of the work being done. Mr. Childress testified, in part, as follows:

"A. I saw them down there and I saw they had a Lone Star truck and I drove up and they had cut the wire and he didn't have anything to block it with except an ordinary fence post and he attempted to block it put up a brace post four or five feet from the corner where he cut it.

"Q. Did you have any conversation with that man? A. I said, 'I thought you were going to put in heavy posts to block this fence to keep it from getting loose.' He said they were sorry, they didn't have any posts—I told him I was disappointed in it. I didn't like for them to do it that way. * * *

"Q. These places (where) they cut your fence, did they attempt to build any other gates? A. Temporary wire gates.

"Q. Were those wire gates left open? A. Yes. I had a young fellow, Mr. Lorance's boy. I saw it was looking kind of dangerous, and he worked for me about three weeks guarding the pasture and looking after the cattle and stock. * * * I worked about three weeks.

"Q. How did you manage to do that, Mr. Childress? A. I would get up every morning and jump in my pick-up and look after things, and then at noon I would get off a little early and run out to see how they were.

"Q. That is a twenty-mile trip. A. Yes.

"Q. How long did that last? A. About three weeks."

And he further testified in part:

"* * * I didn't make any objections to anything they did. * * *

"Q. You are not complaining, I believe you said about the Gas Company using its right of ingress and egress on its property there? A. No.

"Q. Whatever rights the Gas Company has under its contracts and easement you recognize them? A. I certainly will."

After the removal of the pipe line had been completed plaintiffs made a claim for damages to their land, fences and grass and for other items. The Gas Company refused to pay the damages claimed by plaintiffs and this suit was filed.

Plaintiffs, in their pleadings, among other things, alleged: "That previous to their purchase of this land, the grantors of these plaintiffs had executed a right-of-way or right-of-way deeds to the defendant, creating an easement in each instrument, and authorizing the defendant to lay and maintain a pipe line across said premises. That plaintiffs' purchase of said land was

subject to the rights thereby granted. That said deed or deeds granted the right to the defendant to construct, maintain and operate pipe lines and to remove the same from these premises. That it further provided in said deed or deeds that the grantors therein had the right fully to use and enjoy the premises except for the purpose specifically granted. In said deed or deeds the grantee agreed to pay damages which might arise to growing crops or fences from such operations * * *."

Plaintiffs prayed substantially for (1) $892 for damages sustained and for general and special relief in law or in equity, and (2) "that * * * the court issue its writ of injunction, permanently restraining the defendant, its agents and employees, from using any portion of the above described premises not included in defendant's right-of-way, and from using any gate or gates owned by the plaintiffs and not located on the right-of-way, and from using any portion of said premises for any purpose not contemplated by the right-of-way deed or deeds."

After a careful review of this record it is clear to us that plaintiffs are not entitled to any injunctive relief. First of all, the right-of-way deeds are clear, Plaintiffs do not allege any ambiguity in said deeds, nor do they allege any fraud, accident or mistake between the parties in the execution of the grants. In fact, the original grantors were not parties to the action and the deeds were executed and recorded and fixed the rights of the parties before the plaintiffs purchased the property. There is nothing in the pleading of plaintiffs, nor in their prayer for relief, to put defendant on notice that plaintiffs would seek to limit defendant's use of their lands to a strip of land thirty feet wide. We think the rule in Texas is "that in order to warrant a court of equity to grant injunctive relief, the petitioner must specify the precise relief sought and a court is without jurisdiction to grant relief beyond and in addition to that particularly specified." Fletcher v. King, Tex. Civ.App., 75 S.W.2d 980, point 1 p. 982 (writ ref.), and cases therein cited. "The prayer controlled the nature of the relief, and the latter could not be changed so as to cover relief not prayed for." Iford v. Nickel, Tex.Civ.App., 1 S.W.2d 751, 753. It is equally as well settled that "the rules which control the courts in determining the rights under an easement are, in general, the same as those applied to deeds and other written instruments." Armstrong v. Skelly Oil Co., Tex.Civ.App., 81 S.W.2d 735, 736, writ ref. It necessarily follows that under this rule the right-of-way deeds must be construed most strongly against the grantor, and most favorably to the grantee, so as to confer the largest estate which a fair interpretation will permit. Stevens v. Galveston, H. & S. F. Ry. Co., Tex.Com.App., 212 S.W. 639; Texas & N. O. Ry. Co. v. Orange County, Tex.Civ.App., 206 S.W. 539, writ ref.; Gladewater County Line Independent School Dist. v. Hughes, Tex. Civ.App., 59 S.W.2d 351; Stanbery v. Wallace, Tex.Com.App., 45 S.W.2d 198. "The language of a deed is the language of the grantor, and, if there be a doubt as to its construction, it should be resolved against him." Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551, 552.

Appellees say that the evidence can be summarized as follows: "Appellant's employees, once or twice a week, and more often in the winter time, use appellees' private roads and gates, not on the right-of-way; that gates are left open so that cattle and goats go from one pasture to the other; that appellees keep their registered cattle in one pasture and their grade cattle in another; that they are breeders and are engaged in building up a desirable strain of high grade cattle." Appellees contend substantially that since the Gas Company's district foreman (supervisor of pipe line construction, maintenance, repairs, regulating pressure on main line transmission, all installations relating to pipe line transmission and production) testified substantially to the effect that (1) twenty-five or thirty feet was sufficient width in which to take up the twelve inch line which was removed, as well as take up the ten inch line still in the ground and sufficient width for trucks and cars to go on the ground for maintenance purposes and wide enough for any purpose the Gas Company might have on plaintiffs' property and that the graded thirty foot right-of-way was a more convenient means of ingress and egress and that the Gas Company would stay on this right-of-way if plaintiffs wanted them to do so, the trial court was justified in finding that a right-of-way thirty feet wide was all that defendant's convenience and necessity required. We do not so understand the law. First of all, the right-of-way deeds did not

stipulate that the defendant should confine its operations to a strip of land thirty feet wide. The deeds, among other things, granted to the defendant "the right-of-way and easement to construct, maintain and operate pipe lines and appurtenances thereto, and to construct, maintain and operate telegraph and telephone lines in connection therewith, together with the necessary poles, guy wires and anchors over and through the following described lands * * * so long as such lines and appurtenances thereto shall be maintained, with ingress to and egress from the premises, for the purpose of constructing, inspecting, repairing, maintaining and replacing the property of Grantee, above described, and the removal of such at will, in whole or in part. * * * Should more than one pipe line be laid under this grant at any time, the sum of twenty-five cents per lineal rod for each additional line shall be paid, besides the damages above provided for. .* * * It is hereby ·understood that the party securing this Grant in behalf of Grantee is without authority to make any covenant or agreement not herein expressed." Since the deeds do not confine the defendant's use to a strip of land thirty feet wide, it is elementary that the court could not re-define the terms of the grant and restrict the use granted by the instruments on the testimony of a district foreman, absent fraud, accident or mistake. "It is elementary that no agent has any implied authority to surrender the vested rights of his principal, * * *." Bell v. Moody, Tex.Civ.App., 147 S.W.2d 852, writ dism., points 3-4, p. 855. See also: 2 Tex.Jur. p. 446, sec. 51; Kentucky River Coal Co. v. Williams, 226 Ky. 93, 10 S.W.2d 617. It is clear to us that the amount of space reasonably needed in the past in any particular operation is a question of fact, and the testimony of the district foreman on such issue would be pertinent. But the defendant is entitled to use in the future as much of the land as each occasion may reasonably demand, and such testimony does not authorize the court to deprive the defendant of what has been legally granted to it by the terms of the right-of-way deeds. "It is for parties, and not courts, to make deeds of conveyance. Men are presumed to be able among themselves to make deeds expressive of their intentions, and, if they fail to do so, or to furnish the means by which their intention can be. determined, it would be an usurpation of authority for courts to undertake to make deeds for them." Gorham v. Settegast, 44 Tex.Civ.App. 254, 98 S.W. 665, 669. See also Babler v. Shell Pipe Line Corporation, D.C., 34 F.Supp. 10; 15 Tex.Jur. 800, sec. 28; Gulf Pipe Line Co. v. Thomason, Tex.Civ.App., 299 S.W. 532; 19 C.J. 907, 908, 909, 975; 28 C.J.S., Easements, §§ 25, 26, 27, 77; Texas Power & Light Co. v. Casey, Tex.Civ.App., 138 S.W.2d 594, writ dis.; 110 A.L.R. 175, 176.

 Appellees further contend substantially that they are entitled to injunctive relief because plaintiffs use the premises for a stock ranch; that it is highly improved for stock raising; that plaintiffs are engaged in raising both registered and grade cattle; and that defendant, while engaged in removing said pipe line, failed to close said gates and thereby permitted an indiscriminate mixing of the registered and grade cattle; thereby interfering with breeding purposes; and that such injuries are irreparable and that legal remedies are inadequate and that such conduct would necessarily result in a multiplicity of suits. As before stated, there was no complaint of the use made of plaintiffs' property by defendant until the pipe line was removed. The injunction suit was filed after the defendant refused to pay the damages claimed by plaintiffs. The damages assessed by the trial court are not assailed by plaintiffs as being inadequate to recompense them for damages sustained. We think the rule is: "An application for injunction is uniformly subjected to a strict construction. * * * Mere uncertainty or mere apprehension of injury is not sufficient." Thomas v. Bunch, Tex.Civ.App., 41 S.W.2d 359, 362, affirmed 121 Tex. 225, 49 S.W.2d 421. See also Southern Oil Corporation v. Waggoner, Tex.Civ.App., 224 S.W. 230; Browning v. Hinerman, Tex.Civ.App., 224 S.W. 236. Again: "It is held that an injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural." Haden Employees' Ass'n v. Lovett, Tex.Civ.App., 122 S.W.2d 230, 232. Moreover "the court cannot grant an injunction to allay the fears and apprehensions of individuals." Southern Oil Corporation v. Waggoner, supra [224 S.W. 232]. See also King's Estate v. School Trustees of Willacy County, Tex. Civ.App., 33 S.W.2d 783, writ ref. Under the trial court's judgment the defendant would be required to seek the aid of the

court each time its operations may require the use of a strip of land more than thirty feet wide. We think such action of the court restricts the provisions of the right-of-way deeds and necessarily such decree must fail. Moreover, the contention that defendant's agents and employees will in the future go through the gates on the premises and leave them open and thereby permit the herds to mix has no support in the record. The district foreman, defendant's witness, testified in part:

"* * * If Mr. Childress had told me to go around we would go around.

"Q. If he wanted you to stay on the right-of-way you would. A. We would."

 Appellant further contends that the court erred in finding that plaintiffs should recover from the defendants the sum of $500. As a basis for this contention defendant says "that there is no evidence, or at least the evidence is insufficient, to support the judgment for damages * * * because of a lack of evidence showing that the alleged damages were personally caused by the negligence of the defendant." For rule of law, see Lone Star Gas Co. v. Hutton, Tex.Com.App., 58 S.W.2d 19, points 10-11. We overrule this contention. The award was in a lump sum of $500. Appellees sued for various items of damages aggregating $892, the three principal items being (a) injury to land $250; (b) damage to fences $350; (c) damage to surface tank $75. We have carefully reviewed the evidence on these items and we think that it is sufficient to support the implied finding of the trial court that the damages were caused by the negligence of the Gas Company and sufficient to support the amount awarded. We feel that it would unduly extend this opinion to review the evidence as to damages and we do not believe it would serve any useful purpose to do so. The damages to the land and to the fences and to the water tank are clear and it was a question of fact for the trial court to determine whether or not such damages were due to the negligence of the defendant, as well as to find the amount.

It follows from what we have said that we are of the opinion that the trial court erred in issuing the injunction and that this injunction must be dissolved. It further appearing to us that the cause has been fully developed, there is no occasion to reverse and remand the cause and the judgment with respect to the injunction must be reversed and rendered. It further appears to us that the judgment awarding damages to plaintiffs in the sum of $500 must be sustained and the judgment of the trial court in this respect is affirmed.

Accordingly, the judgment as to the injunction granted is reversed and rendered and the judgment of the trial court awarding damages to the plaintiffs is in all things affirmed.

 We are further of the opinion that it would be equitable for the costs incurred in the trial court to be adjudged against the defendant and the costs incurred on this appeal to be adjudged equally against appellant and appellees, and it is so ordered. See Rule 448, T.R.C.P.; Hake v. Dilworth, Tex.Civ.App., 96 S.W. 2d 121, point 13, p. 126, writ dism.; J. I. Case Threshing Machine Co. v. Manes, Tex.Com.App., 254 S.W. 929, point 10, p. 932. See also: Baker Hotel v. Rogers, Tex.Civ.App., 157 S.W.2d 940, error refused, 138 Tex. 398, 160 S.W.2d 522; Wichita Nat. Bank v. United States Fidelity & Guaranty Co., Tex.Civ.App., 147 S.W.2d 295; Parsons v. John Deere Plow Co., Tex.Civ.App., 113 S.W.2d 970.